**YODER GRAIN, INC., an Indiana Corporation, Edward C. Springer, Ruth E. Springer, and Gregg S. Springer, Appellants,**

v.

**Gregory M. ANTALIS, Appellees.**

**No. 02A03–9905–CV–186.**

Court of Appeals of Indiana.

Jan. 20, 2000.

Timothy Logan, Benson, Pantello, Morris, James & Logan, Fort Wayne, Indiana, Attorney for Appellants.

James P. Posey, Laura Reuss, Beers, Mallers, Backs & Salin, Fort Wayne, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, J.

### Case Summary

Yoder Grain, Inc., Edward Springer, Ruth Springer, and Gregg Springer (collectively, "Investors") appeal the trial court's grant of Gregory M. Antalis' mo-

tion to dismiss based on the Investors' failure to state a claim upon which relief could be granted. We affirm.

### Issues

Investors raise the following issues for our review:

I. Whether the complaint states a claim under the Indiana and federal Racketeer Influenced and Corrupt Organizations (RICO) statutes; and

II. Whether the complaint states a claim under the Indiana Crime Victims Relief Act.

### Facts and Procedural History

In July 1995, the Investors filed a complaint for rent and storage against Baysinger Automotive. In June 1996, the Investors and the Baysingers entered into an Agreed Judgment for $143,000, thereby settling any claims the Investors may have had against Baysinger Automotive and the Baysingers. In August 1997, the trial court granted the Investors' motion to file an amended complaint, which was further amended with permission from the court in November 1997. The complaint alleged that Antalis violated the Indiana and federal civil RICO provisions as well as the Indiana Crime Victims Relief Act. In February 1998, Antalis moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The court granted Antalis' motion to dismiss on August 10, 1998.

On August 20, 1998, as a matter of right, the Investors filed their Third Amended Complaint. The Investors alleged that in April 1993, Antalis deposited money orders totaling $49,200 in his client trust account in Ohio for the benefit of his client, Lee Wayne Baysinger. Thereafter, in April through June 1993, Antalis distributed the money from the trust account to the Baysingers pursuant to Lee Baysinger's instructions. From this series of events, the Investors allege that Antalis violated state and federal civil RICO provisions and the

Indiana Crime Victims Relief Act. Specifically, they allege that Baysinger Automotive constituted an enterprise and Antalis participated in the operation or management of the enterprise through a pattern of racketeering activity. They assert that Antalis committed or aided his clients in committing the following predicate acts: criminal conversion, deception, theft, forgery, fraud, money laundering, mail and wire fraud, and structuring to evade reporting requirements. In particular, the Investors allege that Antalis knew that the money orders were to be applied directly to the purchase of automobiles and that by holding the money orders in his client trust account and paying the money back to Baysinger, Antalis assisted Baysinger in defrauding Yoder Grain and the Springers of their investment.

Again, Antalis moved to dismiss the complaint for failure to state a claim for relief. The trial court granted Antalis' motion to dismiss on February 26, 1999. The Investors now appeal the dismissal of their third amended complaint.

### Discussion and Decision

#### Standard of Review

Our standard of review of a dismissal granted pursuant to Trial Rule 12(B)(6) is well-settled:

A trial rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of a claim, not the facts supporting it. Therefore, we view the pleadings in the light most favorable to the nonmoving party and draw every reasonable inference therefrom in favor of that party. When reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law.

*Borgman v. Aikens,* 681 N.E.2d 213, 216–17 (Ind.Ct.App.1997), *trans. denied.* When reviewing a motion to dismiss for failure to state a claim, "this court accepts as true the facts alleged in the complaint." *Minks v. Pina,* 709 N.E.2d 379, 381 (Ind.

Ct.App.1999), *reh'g denied.* However, only well-pleaded material facts must be taken as admitted. *Anderson v. Anderson,* 399 N.E.2d 391, 406 (Ind.Ct.App.1979). Furthermore, a court should not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading. 5A WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, Civil Section 1363, p. 464. "We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint." *Minks,* 709 N.E.2d at 381. Furthermore, we will affirm the trial court's ruling if it is sustainable on any basis found in the record. *Id.*

The Investors contend that their third amended complaint adequately alleges a cause of action under federal and state RICO provisions, as well as the Indiana Crime Victims Relief Act. We shall address the sufficiency of the Investors' allegations under each provision in turn.

## I. State and Federal RICO Claims

■ First we note that Indiana RICO is patterned after federal RICO and thus we discuss the Investors' federal and state RICO claims jointly. *See State v. Allen,* 646 N.E.2d 965 (Ind.Ct.App.1995) (noting that state RICO is patterned after federal RICO statute), *trans. denied; Mendenhall v. Goldsmith,* 59 F.3d 685 (7th Cir.1995), *cert. denied,* 516 U.S. 1011, 116 S.Ct. 568, 133 L.Ed.2d 492 ("Under Indiana law, Indiana Civil Remedies for Racketeering Activity and Racketeer Influenced and Corrupt Organizations Acts were patterned after the federal anti-racketeering

laws, which were designed to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots."). The Investors allege that Antalis violated IND.CODE § 35–45–6–2(3) [1] and 18 U.S.C. §§ 1962(c) [2] and (d).[3]

## A. Employed by or Associated with an Enterprise: 18 U.S.C. § 1962(c) and IC § 35–45–6–2-(3)

■ In their third amended complaint, the Investors allege that Antalis violated the provisions of subsection (c) in that he "was employed by and associated with the Baysinger enterprise and unlawfully, directly or indirectly, conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering." Record at 237. To state a claim under federal RICO provision 18 U.S.C. § 1962(c), "a plaintiff must allege 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity ." *See Goren v. New Vision Intern., Inc.,* 156 F.3d 721, 727 (7th Cir.1998) (internal quotations omitted). Allegations that simply follow the statutory language are not sufficient. *Id.* Plaintiffs must allege sufficient facts to support each element of a § 1962(c) claim. *Id.; Wojtowicz v. State,* 545 N.E.2d 562 (Ind.1989) (holding that establishment of pattern of racketeering activity is necessary element for proof of crime of corrupt business influence). In assessing whether the Investors have pleaded sufficient facts to support their RICO allegations, we focus our review on two requirements of pleading a viable RICO claim under § 1962(c)—the conduct requirement and

---

1. "A person:
    . . .
    (3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;
    · commits corrupt business influence, a class C felony."

2. "It shall be unlawful for any person employed by or associated with any enterprise

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

3. "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

the pattern of racketeering activity requirement.

### 1. The Conduct Requirement

In *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court set forth the type of facts a plaintiff must allege to support the "conduct" element of a RICO charge. In *Reves*, the plaintiff alleged that the accounting firm prepared annual audit reports that knowingly overvalued the principal asset of the cooperative, thereby violating subsection (c) by conducting the affairs of an enterprise. The Court held that the accounting firm's preparation of financial statements and audits did not constitute sufficient participation in the operation or management of the affairs of the enterprise to give rise to liability. Thus, in order to satisfy the "conduct" element, the Court held the plaintiff must allege that the defendant "participated in the operation or management of the enterprise itself," and that the defendant played "some part in directing the enterprise's affairs." *Id.* at 179, 113 S.Ct. 1163. "[M]ere participation in the activities of the enterprise is insufficient; the defendant must participate in the operation or management of the enterprise." *Goren*, 156 F.3d at 727. Moreover, even knowing concealment of the enterprise's activities is not sufficient to establish liability under § 1962(c). *See id.* at 728; *see also Department of Economic Development v. Arthur Andersen & Co.*, 924 F.Supp. 449, 465–69 (S.D.N.Y.1996) (rejecting plaintiff's argument that knowingly concealing the enterprise's fraudulent activities was sufficient to establish conduct of the enterprise's affairs).

In this case, the Investors have failed to plead sufficient facts to meet the *Reves* "operation or management" test. In their amended complaint, the Investors alleged that "through his oversight and direct dealings with the enterprise and Plaintiff's investments, Mr. Antalis had a substantial part in directing the affairs of the enterprise." Record at 237. The complaint, however, fails to state any facts that would indicate that Antalis was involved in directing the affairs of Baysinger Automotive, the alleged enterprise. The complaint does allege that Antalis performed certain services for Baysinger Automotive: 1) Antalis represented Baysinger Automotive, Lee Baysinger, and Paula Baysinger in various legal disputes; 2) Antalis was the registered agent for Baysinger Automotive; and 3) Antalis held money in his client trust account for the Baysingers and redistributed it according to Lee Baysinger's instructions. While these allegations clearly suggest a professional relationship between Antalis and the enterprise, Baysinger Automotive, they do not indicate that Antalis took some part in directing the affairs of Baysinger Automotive. "Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren*, 156 F.3d at 728 (citing *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1325 (7th Cir.1998), *cert. denied*, 525 U.S. 818, 119 S.Ct. 57, 142 L.Ed.2d 44).

The Investors seek to demonstrate Antalis' conduct of the enterprise by attempting to show that he was intimately involved in the business. They note that Antalis served as the registered agent of Baysinger Automotive. Although Antalis was the registered agent, serving as agent for the receipt of process for a legal entity is a common professional service typically rendered by an attorney for a corporate client. *See Gilmore v. Berg*, 820 F.Supp. 179, 183 (D.N.J.1993). The Investors also point to the "long-term, intimate relationship" between Antalis and the Baysingers. Appellant's Reply Br. at 6. Given this long-term relationship, they argue, Antalis knew of the Baysingers' fraudulent activities and thus assisted the Baysingers in defrauding the Investors.

The Investors' allegations are derived from Antalis' actions in holding the money invested by the plaintiffs in his client trust account. They contend that by doing so, Antalis committed conversion, theft, fraud, money laundering, structuring, and mail and wire fraud. We find such·a conclusion untenable. Based on the facts alleged in the complaint, we conclude that Antalis' actions were merely services performed by an attorney for a client. While it may seem suspicious at first glance that an attorney would hold funds for a client and redistribute those funds to his client without receiving any portion of the money, we do not find it unusual in the present case given the long-term attorney/client relationship. There is no allegation that Antalis was directing his clients to engage in particular transactions. He merely provided legal services to aid the Baysingers in carrying out business transactions. *See Goren,* 156 F.3d at 728 n. 4 (citing cases in which attorneys who performed legal services could not be held liable under § 1962(c), even in instances where the attorneys' actions were knowingly fraudulent). While Antalis concededly had an ongoing relationship with the alleged enterprise, he did not in any way control or conduct the affairs of the enterprise.

■ Although Antalis' actions were arguably beneficial to the alleged enterprise, such involvement is not sufficient to state a claim under § 1962(c). *See A.I. Credit Corp. v. Hartford Computer Group, Inc.,* 847 F.Supp. 588, 601–02 (N.D.Ill.1994) (stating that despite the conceded benefits of defendants' actions to the enterprise, their peripheral involvement was not sufficient to satisfy the conduct requirement); *see also De Wit v. Firstar Corp.,* 879 F.Supp. 947, 965–66 (N.D. Iowa 1995) (holding that is not sufficient to control even fraudulent activity that is ancillary to the fraud carried out by the RICO enterprise and thus, "even provision of services essential to the operation of the RICO

enterprise itself is not the same as participating in the conduct of the affairs of the enterprise").

■ While an attorney certainly may be liable under RICO for his involvement in his clients' activities, we do not find that to be the case here. *See Handeen v. Lemaire,* 112 F.3d 1339, 1348 (8th Cir. 1997) (stating that attorneys who go beyond providing services and actively participate in the operation or management of a RICO enterprise may be liable under § 1962(c)); Shawn E. Stewart, Note, Handeen v. Lemaire: Attorneys Crossing the Line into the Operation or Management of a RICO Enterprise, 7 UMKC L.REV. 189 (1998). The Investors' amended complaint fails to allege Antalis' participation in the operation or management of the enterprise, and therefore, fails to state a claim under § 1962(c).

### 2. Pattern of Racketeering Activity Requirement

■ Even if the Investors' complaint could be read to allege that Antalis took some part in directing the affairs of Baysinger Automotive, it still fails to allege a cause of action against Antalis because the Investors fail to plead sufficient facts to show a pattern of racketeering activity. A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering committed within a ten-year time period. 18 U.S.C. § 1961(5). While two acts are necessary to form a pattern, two acts alone generally are not sufficient. *Williams Electronics Games, Inc. v. Barry,* 42 F.Supp.2d 785, 794 (N.D.Ill.1999) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). In addition to the predicate acts, plaintiffs must show continuity and relationship. *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893; *see also* IND.CODE § 35–45–6–1,[4] *Kollar v. State,* 556 N.E.2d 936 (Ind. Ct.App.1990), *trans. denied.*

4. " 'Pattern of racketeering activity' means engaging in at least two (2) incidents of racke-

teering activity that have the same or similar intent, result, accomplice, victim, or method

We limit our discussion to the continuity prong of this test because none of the parties argues that the relationship prong is unsatisfied. Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. 2893. To establish closed-ended continuity, a plaintiff must allege "a series of related predicates enduring a substantial period of time." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir.1992) (internal quotation omitted). However, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. Moreover, "[a] single scheme which lasts only a short period does not have the requisite continuity, even if there are multiple predicate acts and victims." *Lycan v. Walters*, 904 F.Supp. 884, 902 (S.D.Ind. 1995) (citing *Miller v. Gain Financial, Inc.*, 995 F.2d 706, 709 (7th Cir.1993)). Open-ended continuity is "a course of criminal activity which lacks the duration and repetition to establish continuity." *Midwest Grinding Co., Inc.*, 976 F.2d at 1023. To establish open-ended continuity, a plaintiff must allege "past conduct which 'by its nature projects into the future with a threat of repetition,'" *id.*, or is "an ongoing entity's regular way of doing business." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.

While the distinction between closed-ended and open-ended continuity is not precise, the Seventh Circuit has formulated a multifactor test to guide our inquiry. These factors include: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

To the extent Plaintiffs attempt to allege a pattern of racketeering activity, they have failed to allege the requisite continuity. The Investors allege 1) one general scheme—the Baysingers' attempt to defraud the Investors; 2) two victims—Yoder Grain and the Springers; 3) four acts—converting the investment funds, laundering the money through Antalis' client trust account, structuring financial transactions, and evading reporting requirements; and 4) a time period of three months—from the initial loan in April 1993 to the final distribution from the trust account by Antalis in June 1993. In their third amended complaint, the Investors allege that the Baysingers failed to repay loans from 1991 and 1992. During this time, Antalis had a continuing attorney/client relationship with the Baysingers. However, Antalis' alleged involvement in racketeering activity did not occur until April 1993 in relation to the $50,000 investment, and his involvement ended in June 1993 when he distributed the remainder of the $50,000 to Baysinger. Thus, this was a closed-ended scheme, and the Investors must show a threat of repetition in the future. The Investors have failed to do so. They apparently allege that because Antalis continued to represent the Baysingers in other legal matters, there is a threat of repetition of racketeering activity in the future. Even taking the Investors' allegations as true, we conclude that they have failed to allege the continuity necessary to state a RICO claim. In sum, these allegations constitute " 'the type of short-term, closed-ended fraud that, subse-

of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents. However, the incidents are a pattern of racketeering activity

only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity."

quent to *H.J.*, [the Seventh Circuit] consistently has held does not constitute a pattern.'" *McDonald v. Schencker*, 18 F.3d 491, 498 (7th Cir.1994). The Investors failed to state a claim under § 1962(c).

B. Conspiracy: 18 U.S.C. § 1962(d)

■ The Investors also allege that Antalis violated the conspiracy provision of RICO. To state a claim under the conspiracy provision of RICO, the plaintiff must show that the defendant 1) agreed to acquire or maintain interest or control of an enterprise or to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity and 2) further agreed that someone would commit at least two predicate acts to accomplish these goals. *See Gagan v. American Cablevision, Inc.*, 77 F.3d 951 (7th Cir.1996). "A defendant can be charged under § 1962(d) even if he cannot be characterized as an operator or manager of a RICO enterprise under *Reves v. Ernst & Young*." *Goren*, 156 F.3d at 731. However, the broad structure of the RICO conspiracy provision should not be used by the courts "to criminalize mere association with an enterprise." *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir.1986) *cert. denied*, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). Thus, plaintiffs must allege that defendant "agreed to the objective of a violation of RICO." *Id.* In *Neapolitan*, the Seventh Circuit analyzed a RICO conspiracy claim:

> From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements ...: an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement

of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an actionable 1962(d) claim. In a RICO conspiracy, as in all conspiracies, agreement is essential.

*Id.* at 499.

■ In order to state a viable claim under § 1962(d), the Investors must allege (1) that Antalis agreed with Baysinger to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that Antalis and Baysinger further agreed that someone would commit at least two predicate acts to accomplish those goals. The Investors fail to allege a viable RICO conspiracy against Antalis. The Investors' complaint alleges that "Mr. Antalis was aware of false representations inducing Plaintiff's investment and of the requirement that the investment be made directly towards the lot of Chevy S–10s and he laundered the money orders through his trust account to assist his client in avoiding detection." Record at 238. Although they allege that Antalis performed certain services for the Baysingers and knew that the Baysingers sought to defraud the Investors, the Investors have failed to allege a specific agreement by Antalis to maintain an interest in or control of an enterprise or participate in the affairs of the enterprise or an agreement to the commission of two specific predicate acts. In essence, they have alleged nothing more than mere association with the enterprise. Vague and conclusory allegations of conspiracy are not sufficient to state a claim. *See Goren*, 156 F.3d at 732 ("It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy.") (citations omitted). Absent specific allegations, the Investors fail to allege any facts that support the existence of an

agreement between Baysinger and Antalis to defraud Yoder. Therefore, the trial court properly dismissed the Investors' RICO claims against Antalis.

## II. Indiana Crime Victims Relief Act IC § 34–24–3–1

The Investors also seek to recover under the Crime Victims Relief Act, IND. CODE § 34–24–3–1, which allows treble damages if a person suffers a pecuniary loss as a result of a violation of IC § 35–43, IC § 35–42–3–3, IC § 35–42–3–4, or IC § 35–45–9. In order to establish a viable claim, a plaintiff must show a violation of one of the specific code sections and that such violation caused the loss suffered by the plaintiff. See Gilliana v. Paniaguas, 708 N.E.2d 895, 899 (Ind.Ct.App.1999), trans. denied. Here, the Investors allege that Antalis committed criminal conversion, IC § 35–43–4–3, theft/receiving stolen property, IC § 35–43–4–2, fraud, IC § 35–43–5–4, and deception, IC § 35–43–5–3, which resulted in the loss of their investment.

The Investors fail to allege sufficient facts to state a claim under any of the criminal statutes. In their complaint, the Investors allege that Antalis received funds from Baysinger, deposited the funds in his client trust account, and re-disbursed the funds according to Baysinger's instructions. All of Antalis' actions, however, occurred outside of Indiana. Baysinger delivered the funds to Antalis in Ohio; Antalis deposited the funds in his client trust account at a bank in Ohio; Antalis disbursed the funds to Baysinger in Ohio. Thus, even assuming Antalis' actions were criminal, they do not suffice to establish liability under the Crime Victims Relief Act as his actions do not violate Indiana law. See Koger v. State, 513 N.E.2d 1250, 1257 (Ind.Ct.App.1987) (holding that a burglary committed in Ohio could not be used as a predicate act under Indiana RICO because a burglary committed in Ohio was not a violation of Indiana law). The only possible connection between Antalis' actions and Indiana is under an accomplice theory of liability; in other words, Antalis aided and abetted the Baysingers in criminal activity in Indiana. Even so, the Investors' complaint still fails to state a claim. Indiana Code § 35–41–1–1 provides that:

> (b) A person may be convicted under Indiana law of an offense if:
>
> . . .
>
> (4) conduct occurring in Indiana establishes complicity in the commission of, or an attempt or conspiracy to commit, an offense in another jurisdiction that also is an offense under Indiana law.

(emphasis added). Here, Antalis' conduct occurred in Ohio, and therefore does not satisfy the jurisdictional requirement for accomplice liability in Indiana. See IND. CODE § 35–41–1–1(b); Green v. State, 232 Ind. 596, 115 N.E.2d 211 (1953) (holding that no matter how closely an act is connected with Indiana, if it is done entirely outside Indiana's boundaries, it should not be punished by Indiana); Cruthers v. State, 161 Ind. 139, 67 N.E. 930, 932–33 (1903). Thus, Antalis has not committed an offense under Indiana law.

We note that contrary to the Investors' assertions, Antalis' alleged conduct does not rise to criminal activity. Lee Baysinger asked Antalis to hold funds for him because he did not have a checking account. The money orders presented to Antalis were made out to Baysinger Automotive. As the sole proprietor of Baysinger Automotive, Lee Baysinger had the authority to transfer the money orders. Antalis held the money in his client trust account and paid it back to his client upon his request. Merely holding money for a client and returning it pursuant to his instructions is not conversion. Thus, the Investors have failed to state a claim under the Indiana Crime Victims Relief Act, and therefore, their complaint was properly dismissed.

We are mindful of the fact that these bases for dismissal of the cause against Antalis were not discussed by the trial court. Nevertheless, given that we review the dismissal on a de novo basis, we are free to conduct our inquiry on an independent basis. Thus, the trial court properly dismissed the Investors' complaint for failure to state a claim. For these reasons, the trial court's grant of the motion to dismiss is affirmed.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.