DIRECTV, a California corporation,
Plaintiff,

v.

James EDWARDS, Defendant.

No. 2:03CV43AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 17, 2003.

Calvin D. Hawkins, Gary, IN, Julie C. Lonstein, Ellenville, N.Y., Brian L. McDermott, Kim F. Ebert, Jeremy A. Klotz, Richard A. Smikle, Indianapolis, IN, Steven Goldman, Fort Lauderdale, FL, Philip C. Benson, Hammond, IN, for Plaintiff.

Paul B. Overhauser, Greenfield, IN, Lawrence C. DiNardo, Michael J. Gray, Chicago, IL, Bryan L. Ciyou, Indianapolis, IN, Alan D. Wilson, Kokomo, IN, Trenten D. Klingerman, William E. Emerick, Lafayette, IN, for Defendant.

### MEMORANDUM AND ORDER: MOTION TO DISMISS COUNTERCLAIMS

ALLEN SHARP, District Judge.

#### Introduction

This Cause is before the Court on the Motion of Plaintiff, Directv, to Dismiss Counterclaims posed by Defendant, James Edwards ("Edwards"), filed in response to DIRECTV's institution of the present action. This is a lawsuit instituted to recover for their wrongful access and usage of proprietary signals owned by Directv, through by means of pirated devices.

Directv filed this lawsuit on February 6, 2003. The Complaint alleges that during 2001, Defendant purchased equipment from a company located in Canada that allowed him to gain "pirated" or unauthorized access to certain satellite signals, containing proprietary, copyrighted works intended for the viewing of Directv's customers. Defendant utilized his equipment in this District to steal or "pirate" satellite television services from Directv. The Complaint alleges that Defendant's con-

duct in this regard constituted violations of the Digital Millennium–Copyright Act, 17 U.S.C. § 1203 *et seq.* ("DMCA"), and the Communications Act of 1934, 47 U.S.C. § 605 *et seq.* ("Comm Act"), which provide this Court's basis for jurisdiction under federal question jurisdiction over the Complaint (28 U.S.C. § 1331).

Edwards filed a Counterclaim that alleged that certain of Plaintiff's business practices constituted violations of Indiana's version the federal RICO (Racketeer–Influenced Corrupt Organization) statutes. Defendant also alleged that he is entitled to relief pursuant to the Indiana Crime Victim Act. The basis of Defendant's claims is that Directv engaged in fraud, to the detriment of Defendant and others similarly-situated to Defendant, in pursuing its civil claims against him.

Directv sells television programming to paying customers on either a subscription or a pay-per-view plan. The service is provided by encrypted satellite signals. Customers purchase from Directv certain hardware plus access cards to view the television programming. The combination of hardware and access cards not only protect Directv's proprietary interests in their television programming, but they permit users to unscramble the encrypted satellite signal and view the television programming.

Since its product has entered the market, Directv has become aware that individuals purchase the necessary hardware and access cards from various entities in the United States and Canada that are not affiliated with Directv. To summarize Directv's position in this regard, individuals who purchase this equipment are able to gain pirated access to Directv's programming. Individuals ultimately receive the benefits of satellite television service without paying the costs associated with such service. Individuals are able, in effect, to "steal" and unscramble Directv's satellite signal.

Directv claims that Edwards did just that: he purchased the necessary hardware and access card from a corporation located in Canada during April and May, 2001, received those products and used them to steal and unscramble Directv's satellite signal. Directv alleges that it warned Edwards by letter that it had documentation to prove that Edwards had procured these devices and were putting them to illicit use, and that he could face legal action thereby. Ultimately, after forwarding the warning letter to Edwards, Directv determined that, in order to be made whole, it was necessary to file suit against Defendant under the DMCA and Comm Act.

Defendant's Counterclaim alleges that Directv engaged in fraud to extort money from him and other similarly-situated to Defendant by issuing pre-litigation warning letters that advised suspected "pirates" that they were suspected of stealing Directv's services and could face legal action in the near future. Edwards claims that, because Directv may have issued warning letters to, or even filed suit against, certain individuals who were innocent of pirating, that Directv's conduct amounted to violations of the Indiana RICO statute and the Indiana Crime Victims Act. Directv filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Federal Rule of Civil Procedure 9 for failure to plead fraud with particularity. On October 17, 2003, the parties presented their oral arguments on the motions before this Court in South Bend, Indiana. Upon the request of this Court, the parties submitted the opinions from district courts in other states which have grappled with similar issues present before this Court. Having considered the parties' arguments

and the additional authority submitted by the parties, this Court is prepared to rule on the Motion to Dismiss the Counterclaim.

## Jurisdiction

Before addressing the merits of the Motion to Dismiss, this Court, *sua sponte,* must determine its jurisdictional basis over the claims asserted in the Counterclaim. According to 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," this Court has jurisdiction over the claims asserted in the Complaint, inasmuch as they allege violations of federal law (the DMCA and Comm Act). Although *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 822–28, 6 L.Ed. 204 (1824) gave "arising under" in Article III of the Constitution the broadest possible meaning, extending the grant of jurisdiction to every case in which federal law furnished a necessary ingredient of the claim even if the role was distantly related to the parties' dispute, the Court's jurisdiction at present is more limited. *Int'l. Armor & Limousine Co. v. Moloney Coachbuilders, Inc.,* 272 F.3d 912 (7th Cir.2001), *reh'g denied.* This Court now must determine whether it has jurisdiction to adjudicate the claims asserted in Defendant's counterclaim, which are brought exclusively under Indiana state law, and do not implicate any federal laws. In this regard, if the Court has original jurisdiction over the counterclaims at all, it is through diversity or supplemental jurisdiction. The United States Code provides for diversity jurisdiction as follows:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds in sum or value $75,000, exclusive of interests or costs, and is between—(a) citizens of different States; (b) citizens of a State and citizens or subjects of a foreign state; (c) citizens of different States and in which citizens or subjects of a foreign State are additional parties; and (d) a foreign state, as defined by section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332. Supplemental jurisdiction is provided for in the United States Code as follows:

**Supplemental Jurisdiction. (a)** ... In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367. Now that Congress has codified the supplemental jurisdiction in § 1367(a), courts should use the language of the statute to define the extent of their powers. *Channell v. Citicorp Nat'l Servs., Inc.,* 89 F.3d 379, 385 (7th Cir.1996); *Adams Street Joint Venture v. Harte,* 231 F.Supp.2d 759, 762 n. 1 (N.D.Ill.2002). At the same time, the Court also must be mindful of the strictures of Federal Rule of Civil Procedure 13, which provides:

Rule 13. **Counterclaim and Cross–Claim.** (a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction...

(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

■ A counterclaim that is before the Court as a permissive counterclaim rather than a compulsory counterclaim is outside the supplemental jurisdiction that is provided for in 28 U.S.C. § 1367(a) (covers only claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, and requires an independent basis of federal jurisdiction). *See, Oak Park Trust and Savings Bank v. C.G. Therkildsen*, 209 F.3d 648, 651 (7th Cir.2000). However, the language of § 1367 now permits district courts to maintain supplemental jurisdiction over counterclaims, whether compulsory or permissive, so long as the counterclaims are so related to the original claims. *Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir.1997); *Adams Street*, 231 F.Supp.2d at 762 (quotation marks omitted). Further, the Seventh Circuit has interpreted the language of § 1367(a) to require only a loose factual connection between the claims, and supplemental jurisdiction is generally extended when the state and federal claims derive from a common nucleus of operative facts. *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir.1995); *Adams Street*, 231 F.Supp.2d at 762 (citations omitted). Yet, if the counterclaim is not a compulsory counterclaim under FRCP 13, therefore preventing this Court asserting supplemental jurisdiction over it, then the counterclaim must have some independent basis of federal jurisdiction. *See Therkildsen*, 209 F.3d at 651. Having already ruled out federal question jurisdiction under 28 U.S.C. § 1331, this Court must determine whether it has diversity jurisdiction pursuant to 28 U.S.C.

§ 1332, meaning that the parties must have complete diversity of citizenship, and the amount in controversy asserted by Defendant exceeds $75,000.

■ Defendant's claims are asserted under Indiana's version of the Racketeer–Influenced Corrupt Organizations ("RICO") statute at I.C. 35–45–6–2 and Indiana's Crime Victim's Act at 35–45–1–1. Defendant's claims assert violations of Indiana state law and seek compensation, and are based upon Plaintiff's institution of numerous lawsuits in Indiana and nationwide. Defendant's claims appear to focus on the zeal with which Plaintiff has pursued individuals against whom it has amassed evidence to prove that these individuals used electronic devices to steal ("pirate") Directv's satellite signal. Plaintiff's claims focus on activity that took place that ultimately led the to the institution of this and its related lawsuits; Defendant's claims focus on Directv's conduct immediately preceding filing suit and in relation to this and related lawsuits. In this regard, the Court cannot find that the allegations asserted in the counterclaim arise out of the same transaction or occurrence as those asserted in the Complaint. Therefore, the counterclaim is not "compulsory" for purposes of FRCP 13(a), and this Court does not have supplemental jurisdiction. If the counterclaim is "permissive" under FRCP 13(b), the Court must have diversity jurisdiction. It appears that the parties are completely diverse. Still, however the amount in controversy must exceed $75,000. Assuming that Defendant's claims are true, and he can plead that he is entitled, in good faith, to more than $75,000 in damages or other relief based upon the counterclaim, this Court would have subject-matter jurisdiction to consider the Counterclaim. Defendant's brief does not demonstrate that he qualifies for diversity jurisdiction. It seems a

dubious proposition that Directv is liable to Defendant to the extent of a sum exceeding $75,000 for its alleged violations of Indiana law. Rule 12(b)(1), Fed. R. Civ. P., permits this Court to dismiss claims for lack of subject-matter jurisdiction. In this case, it is Defendant's burden to establish that this Court has jurisdiction over its counter-claim. *See, KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Adams Street,* 231 F.Supp.2d at 761. However, this Court will err on the side of finding that its assertion of subject matter jurisdiction is proper, and will rule on the merits of Plaintiff's Motion to Dismiss Defendant's Counterclaim.

## Motion To Dismiss

Plaintiff's motion to dismiss is governed by *Rule 12(b)(6),* Fed.R.Civ.P., which provides that dismissal is appropriate if a complaint or counterclaim fail to state a claim. A motion to dismiss tests the sufficiency of the counterclaim, not the merits of the suit. *Autry v. N.W. Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). In evaluating a motion to dismiss, the Court accepts as true all well-pleaded facts in the counter-claim and draws all reasonable inferences in favor of the non-moving party. *Ameritech Corp. v. McCann,* 297 F.3d 582, 585 (7th Cir.2002).

### Indiana RICO Statute

■ In an action in which jurisdiction is based upon diversity, the district court applies the Federal Rules of Civil Procedure in determining claims arising from state law, in this case, Indiana. *See Gasperini v. Center for the Humanities, Inc.,* 518 U.S. 415, 426, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). Indiana's RICO statute provides:

A person: (1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise; (2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity; commits corrupt business influence, a class C felony.

I.C. 35–45–6–2.

■ "The Indiana RICO statute is modeled after federal RICO, and also requires proof of conduct of an enterprise through a pattern of racketeering activity. As with federal RICO, a Plaintiff must satisfy the continuity plus relationship requirement with respect to the predicate acts alleged." *Williams v. Aztar Indiana Gaming Corp.,* 2003 WL 1903369, *2 (S.D.Ind.2003), *citing Yoder Grain Inc. v. Antalis,* 722 N.E.2d 840 (Ind.Ct.App.2000). Since the state version of RICO tracks federal RICO, this Court relies on the guidance for analyzing RICO claims that have been pronounced by the United States Supreme Court. The establishment of a pattern of racketeering activity is a necessary element for proof of the crime of corrupt business influence. *See Wojtowicz v. State,* 545 N.E.2d 562 (Ind.1989), *Yoder Grain,* 722 N.E.2d at 847.

■ In his Counterclaim, Defendant alleges that Plaintiff engaged in fraud as the predicate act required to assert a RICO act violation. Defendant needed to allege that Directv participated in the operation or management of the enterprise itself, and that Directv played some part in directing the enterprise's affairs. *See Reves v. Ernst & Young,* 507 U.S. 170, 179, 113

S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Yoder Grain*, 722 N.E.2d at 847 (quotation marks omitted). Mere participation is insufficient. *Id.*

■ In addition, Defendant must plead facts sufficient to show a pattern of racketeering activity. *Id.* In addition to the predicate acts, Defendant must show continuity and relationship. *Id., citing H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). "Continuity is both a closed– and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Yoder Grain*, 722 N.E.2d at 848, *citing H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. 2893. The Seventh Circuit has set forth the following factors to use in addressing continuity: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Yoder Grain*, 722 N.E.2d at 849, *citing Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).

■ Defendant also must allege facts sufficient to establish a conspiracy under RICO. *Yoder Grain*, 722 N.E.2d at 849. Defendant must allege: (1) that Directv agreed to acquire or maintain interest or control of an enterprise or to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity and (2) further agreed that someone would commit at least two predicate acts to accomplish these goals. *Yoder Grain*, 722 N.E.2d at 849, *citing Gagan v. American Cablevision, Inc.*, 77 F.3d 951 (7th Cir. 1996).

Defendant alleges that Directv committed the following "racket": Prior to filing suit against Defendant (and hundreds of others similarly-situated to Defendant), Directv allegedly issued warning letters to those individuals it suspected of pirating its satellite signals. After failing to receive satisfaction through its warning letters, Directv filed suit against Defendant and hundreds of others. (Indeed, numerous cases similar to this Defendant's are pending before this Court.) The essence of Defendant's claims are that Plaintiff either haphazardly or intentionally issued warning letters and instituted lawsuits against "hundreds of thousands" individuals, some of which who were innocent of pirating Directv's satellite signal. Defendant argues that Directv's conduct in this regard, specifically pursuing even innocent individuals for payment, amounted to extortion of money.

Defendant has not met the factors listed in *Yoder Grain* for showing continuity. Timing is Defendant's first problem. It appears that the warning letters, which apparently were written with an eye toward impending litigation, were issued within a relatively short time span. If each letter were considered an individual predicate act for factor (1), that might be sufficient to show numerous acts, however Defendant has not provided the Court with a number representing even an estimate of the total number of alleged victims. As for factor (2), there is no allegation of separate schemes. Instead, Defendant's argument is that Directv engaged in one massive scheme to defraud thousands of individuals. In addition, Edwards has not met the elements of establishing the Directv participated in a conspiracy.

■ Finally, the Court is not convinced that Defendant has plead fraud with sufficient particularity to satisfy FRCP 9(b) which provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be plead with particularity . . ." Directv is correct in its argument that Defendant has not set forth

sufficient allegations of fraud to withstand dismissal. Defendant's allegations are too vague to be sufficiently particular, and do not demonstrate how Edwards specifically was defrauded. Edwards should not have to wait until the parties begin discovery in this case in order to find facts sufficient to plead in support of his claims of fraud. At the very least, Edwards needs to allege to this Court the how, when, and where the alleged fraud was committed, and how specifically Directv engaged in fraud to Defendant's detriment.

### Indiana Crime Victims Relief Act

The Indiana Crime Victims Relief Act allows treble damages if a person suffers a pecuniary loss as a result of a violation of certain portions of the Indiana Code. See I.C. 34–24–2–6, I.C. 34–24–3–1; *Yoder Grain*, 722 N.E.2d at 850. To establish a viable claim, Defendant must show a violation of one of the specific Code sections and that such violation caused the loss suffered by Defendant. *Id.* The Court has already determined that Defendant has not alleged sufficient facts to state a claim for relief under Indiana's RICO statute. Therefore, he is not entitled to injunctive relief or to treble damages in accordance with the Indiana Crime Victims Act.

### Conclusion

Mindful of its burden to resolve all doubts in favoring of the non-moving party on a motion to dismiss, the Court GRANTS Plaintiff's Motion to Dismiss the Counterclaim. Each party shall bear its own costs. **IT IS SO ORDERED.**