**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 23 2014, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**SEBASTIAN CHAPMAN**
Bunker Hill, Indiana

ATTORNEY FOR APPELLEE:

**CAROL A. DILLON**
Bleeke Dillon Crandall, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SEBASTIAN CHAPMAN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1406-CT-420 |
| | ) | |
| CORIZON, LLC, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MIAMI CIRCUIT COURT
The Honorable Timothy P. Spahr, Judge
Cause No. 52C01-1402-CT-49

**October 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Sebastian Chapman appeals the trial court's dismissal of his complaint against Corizon, LLC ("Corizon") for failure to state a claim upon which relief can be granted. Chapman presents a single issue for our review, namely, whether the trial court erred when it dismissed his complaint.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

Corizon has a contract with the Department of Correction to provide medical care to Indiana prisoners. Chapman, an inmate at the Miami Correctional Facility ("MCF"), has Hepatitis C, a chronic illness. During his incarceration in 2013, to monitor his condition, Chapman was routinely scheduled for blood work and urine tests to be conducted between the hours of 1:00 a.m. and 4:00 a.m. On June 21, 2013, Chapman told a physician, employed by Corizon, that he did not want to undergo any blood work or urine tests, and Chapman executed a form entitled "Refusal and Release from Responsibility for Medical, Surgical, Psychiatric and Other Treatment" ("refusal form"). Despite his execution of that form, Corizon continued to notify Chapman that he was scheduled for more tests. Accordingly, on September 9, Chapman filed a grievance with the DOC asserting that Corizon was disrupting his sleep in its attempts to conduct the blood and urine tests.

Corizon continued to contact Chapman in an effort to get him to undergo the blood and urine tests. And on February 28, 2014, Chapman filed a complaint against Corizon. In his complaint, Chapman stated that he had executed the refusal form on June 21, 2013,

but that Corizon continued to schedule the blood and urine tests during nighttime hours on seven occasions thereafter. Chapman alleged that his sleep was disturbed on each occasion. And Chapman alleged that the refusal form he had executed had "put Corizon [LLC] on notice that the unnecessary blood draws were annoying and alarming the plaintiff." Appellant's App. at 8. In a section of the complaint entitled "Claim for Relief," Chapman stated as follows:

> 1.    The communications that forced the plaintiff to participate in the Corizon, [LLC] chronic care program scheduled September 16, October 2, and October 31, not being legitimate communications, were used to harass the plaintiff.
>
> 2.    The communications that scheduled blood or urine samples September 16, October 2, and October 31 were threats used to intimidate the plaintiff to participate in the Corizon, [LLC] chronic care program, and were initiated for the plaintiff's prior lawful act of refusing to participate in the Corizon, [LLC] chronic care program.
>
> 3.    Under the Indiana RICO statute, Corizon, [LLC] is a Racketeer Influenced and Corrupt Organization ["RICO"] having committed at least two predicate offenses of intimidation against the plaintiff.

Id. at 8-9.

Chapman attached two documents to his complaint. The first document states as follows:

> Please drink plenty of water the evening of your lab work.
>
> You are scheduled for a blood and/or urine test 10/23/2013. The test(s) the physician has ordered for you needs to be done before breakfast and therefore will be scheduled sometime between 0001 A.M. and 4 A.M. [sic] Please follow any instructions marked below:
>
> * * *

3

Should you choose to refuse the physician's orders, you need to come to the OSB as scheduled to sign a refusal and state the reason why. Failure to sign a refusal will cause a write-up against you.

Id. at 10. The second document attached to Chapman's complaint is a refusal form executed on September 9, 2013. That document states in relevant part as follows:

I have a doctor's refusal that I signed with your office. I have a copy of that refusal. That refusal is in the computer. Check your records.

This is now becoming harassment—STOP calling me for these tests. I've refused all chronic care. I will be filing a grievance against your employer to find out who is harassing me personally. STOP!!!

Id. at 11.

Pursuant to Indiana Code Section 34-58-1-2, which establishes a screening process for complaints filed by Indiana prisoners, the trial court reviewed Chapman's complaint to determine whether it was frivolous, whether it presented a claim upon which relief can be granted, and whether it sought monetary relief from a defendant who is immune from liability for such relief. After that review, the trial court concluded that Chapman could proceed with his complaint. But the State then filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Trial Rule 12(B)(6),[1] and, after Chapman filed a memorandum in opposition to that motion, the trial court granted the State's motion and dismissed Chapman's complaint. This appeal ensued.

## DISCUSSION AND DECISION

Our review of a trial court's grant of a motion to dismiss under Trial Rule 12(B)(6) is de novo and requires no deference to the trial court's decision. Sims v.

---

[1] The trial court's conclusion that Chapman could proceed with his complaint under Indiana Code Section 34-58-1-2 did not preclude the trial court's subsequent grant of the State's motion to dismiss under Trial Rule 12(B)(6). See Medley v. Lemmon, 994 N.E.2d 1177, 1183 (Ind. Ct. App. 2013).

4

Beamer, 757 N.E.2d 1021, 1024 (Ind. Ct. App. 2001). "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." Trail v. Boys & Girls Clubs of NW Ind., 845 N.E.2d 130, 134 (Ind. 2006). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." Id. When reviewing a Trial Rule 12(B)(6) motion to dismiss, we accept the facts alleged in the complaint as true and view the pleadings in a light most favorable to the nonmoving party and with every reasonable inference in the nonmoving party's favor. Id. We view motions to dismiss under Trial Rule 12(B)(6) "with disfavor because such motions undermine the policy of deciding causes of action on their merits." McQueen v. Fayette Cnty. Sch. Corp., 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), trans. denied.

Further, under Indiana's notice pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case. Shields v. Taylor, 976 N.E.2d 1237, 1244 (Ind. Ct. App. 2012). However, although Indiana's notice pleading rules do not require the complaint to state all elements of a cause of action, the plaintiff must still plead the operative facts necessary to set forth an actionable claim. State v. Am. Family Voices, Inc., 898 N.E.2d 293, 296 (Ind. 2008).

Chapman contends that the trial court erred when it dismissed his complaint because, he maintains, it states claims upon which relief can be granted, namely, harassment, intimidation, and racketeering. The State responds that Chapman "has failed

5

to state a cognizable claim for violation of the Indiana RICO statute or any other cognizable claim." Appellee's Br. at 7. We address the sufficiency of each of Chapman's claims under Trial Rule 12(B)(6) in turn.

In his complaint, Chapman alleged the following facts: on June 21, 2013, Chapman "completed a refusal [form] for all treatment for the chronic care ailment with the Corizon [] doctor"; the refusal form "put Corizon [] on notice that the plaintiff did not want treatment for the chronic care ailment"; on several dates thereafter, Chapman was scheduled for blood draws between the hours of 1:00 a.m. and 4:00 a.m., which Chapman refused; on September 9, Chapman filed a grievance "to stop Corizon [LLC] from disturbing his sleep and rest for unnecessary blood draws"; that grievance was denied; Corizon continued to schedule the "unnecessary" blood draws, and Chapman continued to refuse them; and the scheduled blood draws were "annoying and alarming" to Chapman. Appellant's App. at 5-6. In sum, Chapman alleges that Corizon's conduct in pursuing multiple blood draws during overnight hours, despite his execution of two refusal forms, caused him to be annoyed and alarmed and to lose sleep.

Chapman first maintains that the facts alleged in his complaint support claims for harassment and intimidation. But in support of that contention, Chapman cites only the relevant criminal statutes. Chapman does not direct us to statutory or case law showing that violations of the harassment and intimidation criminal statutes support claims for civil causes of action.[2] Neither does Chapman explain on appeal how the facts he alleges

---

[2] For instance, the Crime Victims Relief Act, Indiana Code Section 34-24-3-1, provides that, if a person suffers a pecuniary loss as a result of a violation of certain listed crimes, not including harassment or intimidation, he may bring a civil action against the person who caused the loss.

6

in his complaint support a cause of action under any tort theory recognized under Indiana law. While we view dismissals under Rule 12(B)(6) with disfavor, Chapman carries the burden to persuade this court that the trial court erred. Chapman has not demonstrated that the factual scenario alleged in his complaint correlates to a legally actionable injury under his theories of harassment and intimidation under the criminal statutes. See Trail, 845 N.E.2d at 134.

Likewise, Chapman's RICO claim cannot stand. Indiana Code Section 35-45-6-2 provides as follows:

A person:

(1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise;

(2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or

(3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;

commits corrupt business influence. . . .

RICO is an anti-fraud statute. Crissen v. Gupta, 994 F. Supp. 2d 937, 945 (S.D. Ind. 2014).[3] Thus, Chapman's RICO claim is subject to the heightened pleading requirement of Indiana Rule of Trial Procedure 9(B), which provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred. Malice, intent, knowledge, and other conditions of mind may be averred generally."

---

[3] The Indiana RICO statute is modeled after the federal RICO statute. Crissen, 994 F. Supp. 2d at 952.

In particular, a plaintiff who alleges violation of the Indiana RICO statute must provide "'proof of conduct of an enterprise through a pattern of racketeering activity.'" Id. at 952 (quoting Directv v. Edwards, 293 F. Supp. 2d 873, 879 (N.D. Ind. 2003)). An enterprise must be more than a group of people who get together to commit a pattern of racketeering activity. Id. at 947. The hallmark of an enterprise is a structure, and there must be a structure and goals separate from the predicate acts themselves. Id. "'[T]here need not be much structure, but the enterprise must have some continuity and some differentiation of the roles within it.'" Id. (quoting Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995). The structure should have three features: "'a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose.'" Id. (quoting Panwar v. Access Therapies, Inc., 975 F. Supp. 2d 948, 957 (S.D. Ind. 2013).

Here, Chapman has not adequately alleged the existence of an enterprise or that Corizon participated in an enterprise. See id. The activities Chapman alleges in his complaint are regular activities of a health care provider and are not alleged to be activities to further the goals of a separate enterprise. See id. (dismissing plaintiff's Indiana RICO claim because he did not adequately allege that the defendant bank participated in an enterprise because the activities alleged were regular activities of a bank). We hold that the trial court properly dismissed Chapman's complaint for failure to state a claim upon which relief can be granted.

Affirmed.

BAILEY, J., and PYLE, J., concur.