ATTORNEY FOR APPELLANTS
Nathaniel Ruff
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
Paul J. Peralta
D. Lucetta Pope
South Bend, Indiana

# In the
# Indiana Supreme Court

_____

No. 45S03-0504-CV-00132

EDDIE TRAIL AND KATRINKA TRAIL,

*Appellants (Plaintiffs below),*

v.

BOYS AND GIRLS CLUBS OF NORTHWEST INDIANA,
DONALD WEISS, BONNIE COLEMAN, JOHN DIEDERICH,
PAUL BAILEY, EDWARD WILLIAMS, FRAN TAYLOR, JAMES
GREINER, RAYMOND MORRIS, AND BONNIE FINE,

*Appellees (Defendants below).*

_____

Appeal from the Lake Superior Court, No. 45D10-0302-CT-00035
The Honorable John R. Pera, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-0309-CV-00389

_____

**April 12, 2006**

**Shepard, Chief Justice.**


Subsequent to a parting of ways with the Boys and Girls Clubs of Northwest Indiana, former executive director Eddie Trail sued the organization and a number of its board members. He alleged breach of contract, defamation, and tortious interference with an employment at will relationship. Because Trail failed to plead sufficient operative facts, and because certain of his claims have no basis in law, we conclude that the trial court was correct to dismiss.

1

**Facts and Procedural History**

This case arises from a motion to dismiss, so the only facts available are those alleged in the complaint. The Boys and Girls Club of Northwest Indiana is an Indiana not-for-profit corporation. Eddie Trail worked with the Club in various capacities for twenty-three years, with the last six as Executive Director. Trail alleges that during his service with the Club, he became a respected and valued member of the organization, earning performance raises and receiving recognition for his work as an Executive Director.

Trail's employment contract with the Club expired on December 31, 2001, and early signs seemed favorable for an extension. Board member John Diederich told Trail in February 2001 that the Executive Committee had voted unanimously to retain him as Executive Director. After the contract expired, board president Donald Weiss informed him that members of the Executive Committee had voted to increase his salary.

Trail alleges that Weiss, Paul Bailey, Bonnie Coleman, and Fran Taylor, who were members of the Executive Committee, were "unhappy for personal reasons with the retention of Trail . . . [and] were upset with [him] because he refused to defer to them on those initiatives and actions that properly were [his] duties as Executive Director." (Compl. ¶¶ 4, 12.) He says these director-defendants "contrived a study of the Club" the purpose of which, Trail alleges, was "to discredit Trail and justify his termination." (Compl. ¶ 13.) To achieve that end, Trail alleged that the defendants created a biased report that cast him in a negative light. (Compl. ¶¶ 14, 16.) Trail says he is uncertain exactly how, or even if, the defendants used the report to remove him from his position, but he alleges that defendant Paul Bailey told Trail the Board of Directors had voted unanimously to terminate him, and then told both the Board of Directors, and the media, that Trail had resigned. (Compl. ¶¶ 18, 20, 21.)[1]

Trail says that although the defendants have "released to a few individuals the alleged contents of parts of the report highly negative about Trail," they have neither released the report

---

[1] The defendants indicate that the Executive Committee voted unanimously on June 6, 2002 to ask Trail to resign. (Decl. Paul Bailey ¶ 7, Appellants' App. at 22.)

2

in its entirety to anyone, nor discussed the contents of the report openly. (Compl. ¶¶ 22-23.) Trail claims that this silence has had a negative impact on his employment since the defendants know that this silence "would be taken erroneously to mean that Trail had been found to have committed grave personal improprieties with the children [the Boys and Girls Club] serve[s] or financial misdeeds such as embezzlement." (Compl. ¶ 23.) As proof of this negative impact, Trail alleges that he has applied for several openings, but that in response he has been treated as a "pariah" and received negative responses from prospective employers, which he states "would have been inconceivable" before his termination. (Compl. ¶¶ 24, 25.)

Based on these allegations, Trail sought relief under several theories, including: breach of implied terms of contract, tortious interference with Trail's contract with the Club, and a claim for defamation based on the contents of the report. Trail's wife Katrinka Trail sought relief for loss of consortium.

The defendants responded by moving to dismiss under Rule 12(B)(6), failure to state a claim. After the parties filed several affidavits, exhibits, and briefs, the trial court dismissed the Trails' claims.

The Court of Appeals concluded that the trial court had properly dismissed Trail's breach of contract claim, but had wrongly dismissed the claims of tortious interference against the Executive Committee members in their unofficial capacity, defamation, and loss of consortium. Trail v. Boys & Girls Clubs of Nw. Indiana, 811 N.E2d 830, 842 (Ind. Ct. App. 2004) vacated. We grant transfer and affirm the trial court.

**Standard of Review**

A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief. See Kitco, Inc. v. Corp. for Gen. Trade, 706 N.E.2d 581 (Ind. Ct. App. 1999). Thus, while we do not test the sufficiency of the facts alleged with regards

to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred.

A court should "accept[] as true the facts alleged in the complaint," Minks v. Pina, 709 N.E.2d 379, 381 (Ind. Ct. App. 1999), and should not only "consider the pleadings in the light most favorable to the plaintiff," but also "draw every reasonable inference in favor of [the non-moving] party." Newman v. Deiter, 702 N.E.2d 1093, 1097 (Ind. Ct. App. 1998). However, a court need not accept as true "allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading." Morgan Asset Holding Corp. v CoBank, ACB, 736 N.E.2d 1268, 1271 (Ind. Ct. App. 2000)(citations omitted).

Indiana Trial Rule 8(A), this state's notice pleading provision, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the plaintiff need not set out in precise detail the facts upon which the claim is based, she must still plead the operative facts necessary to set forth an actionable claim. Miller v. Mem. Hosp. of South Bend, Inc., 679 N.E.2d 1329 (Ind. 1997). Under notice pleading, we review the granting of a motion to dismiss for failure to state a claim under a stringent standard, and affirm the trial court's grant of the motion only when it is "apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." McQueen v. Fayette County Sch. Corp., 711 N.E.2d 62, 65 (Ind. Ct. App. 1999).

### I. Claims for Breach of Contract

Trail contends that the trial court erred in dismissing his claim for breach of the contract that expired by its own terms on December 31, 2001. The Court of Appeals rejected his argument, concluding that Trail's complaint did not provide any facts or legal authority "capable of supporting a breach of contract action against the Club." Trail, 811 N.E.2d at 839, vacated. It observed that after the expiration of Trail's contract, he became "an at-will employee subject to termination at any time with or without cause." Id. at 837. The Court of Appeals concluded that Trail had not alleged any facts that would demonstrate any oral arrangement promising job

4

security.  Id. at 837-39.  We summarily affirm the Court of Appeals' holding on this point.  Ind. App. Rule 58(A).  Consequently, like the Court of Appeals, we will assess Trail's other claims in light of his position as an employee at will.

Employment at will is an American doctrine, one that freed both employer and employee from the strictures of the English common law.  English law presumed that employment contracts of unspecified duration were to last for a year.  This presumption imposed reciprocal legal duties: the duty to provide employment for a year, and the duty to perform service for a year.  It thus ensured, as William Story explained, that "both master and servant may have the benefit of all the seasons."[2]  With few exceptions, the modern American doctrine permits both employers and employees to terminate an employment relationship for any reason and on a timetable of their choosing, without being responsible financially to the other.  See, e.g, Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc., 644 N.E.2d 118, 121 (Ind. 1994); Bochnowski v. People Fed. Sav. & Loan Ass'n, 571 N.E.2d 282, 284 (Ind. 1991).  But see, McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 392-94 (Ind. 1988)(employee at will may recover for wrongful discharge if fired for refusing to perform illegal act).

## II. Defamation Claim

The trial court dismissed the defamation claim after concluding that the complaint "provides no evidence of a communication with defamatory imputation, malice, or special damages resulting from the defamation."  (Order, Appellants' App. at 15.)

---

[2] 2 WILLIAM W. STORY, TREATISE ON THE LAW OF CONTRACTS, 506 §962c (4th ed. 1856).  William Blackstone explained the English rule by stating that the reason for the presumptive one year term was:

> natural equity that the servant shall serve, and the master maintain him, throughout all the revolutions of the respective seasons . . .  and no master can put away his servant, or servant leave his master, after being so retained, either before or at the end of his term, without a quarter's warning, unless upon reasonable cause to be allowed by a justice of the peace; but they may part by consent, or make a special bargain.

1 WILLIAM BLACKSTONE, COMMENTARIES 424-5 (1852).  For a brief history of the development of the modern doctrine of at-will employment, see McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 393-94 (Ind. 1988).

To establish a claim of defamation, a plaintiff must prove the existence of "a communication with defamatory imputation, malice, publication, and damages." Davidson v. Perron, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999). Any statement actionable for defamation must not only be defamatory in nature, but false. Doe v. Methodist Hospital, 690 N.E.2d 681, 687 (Ind. 1997) (citing Restatement (Second) of Torts § 558 (1977)).

The first communication Trail appears to treat as defamatory is the apparent transmission of the report by the individual defendants to other directors or officers of the Boys and Girls Club of Northwest Indiana. (Br. Appellants at 19).

The appellees argue that Trail failed to establish any of the elements of a claim for defamation. Not so. Trail has sufficiently pled the publication requirement. This Court has held that "employee evaluation information communicated intracompany to management personnel may be considered published for purposes of a defamation action." Bals v. Verduzco, 600 N.E.2d 1353, 1356 (Ind. 1992). Transmission of the report between and among the directors of the Boys and Girls Club of Northwest Indiana would constitute publication adequate to support the publication requirement of a defamation claim.

On the other hand, we also said in Bals that "the important role of free and open intracompany communications and legitimate human resource management needs" require protecting the communication of such employment information by a qualified privilege. Id. at 1356. That privilege is a defense against a defamation action and protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty . . . if made to a person having a corresponding interest or duty." Id. (citations omitted). The privilege may be overcome when the plaintiff demonstrates an abuse of the privilege. A claimant can do this by proving an absence of good faith, or excessive publication, or that the statement was made without belief or grounds for belief in its truth. Id.

As to issues such as good faith, Trail has essentially alleged that members of the Executive Committee found him unwilling or unable to conduct business according to their

6

desires. Judge Pera was correct to regard this as an inadequate allegation of bad faith. As for whether Trail has alleged that no basis exists to believe the statements made about him, there is some ground for sympathy with his argument that he can allege nothing else without access to the report itself. (Br. Appellants at 17.)[3] But even under notice pleading, a plaintiff must still set out the operative facts of the claim. Indeed, hornbook law stresses the necessity of including the alleged defamatory statement in the complaint. See, e.g., 53 C.J.S §§ 128-163; 9 Indiana Practice §§28.3-28.14. There is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory. Journal-Gazette Co., v. Bandido's Inc., 712 N.E.2d 446, 457 (Ind. 1999). The defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses.

The second "communication" Trail treats as defamatory is that between the individual defendants and other clubs to whom he has made application. The only communication he alleges is that "defendants have refused to say anything about the report." (Compl. ¶ 23.)

As we observed recently, the "free flow of information about performance helps prospective employees, prospective employers, and the economy in general." Passmore v. Multi-Management Serv., 810 N.E.2d 1022, 1027 (Ind. 2004) (former employer sued for failing to tell future employer about rumors concerning employee). Liability arising out of employment references "poses rather more complex competing policies." Id. (citing Susan Oliver, Opening the Channels of Communication Among Employers, Can Employers Discard Their "No Comment" and Neutral Job References Policies?, 33 Val. U. L. Rev. 687 (1999)).

Attempting a balanced approach to these competing interests, Indiana recognizes a qualified privilege for communications between former and prospective employers. Chambers v. Am. Trans Air Inc., 577 N.E.2d 612, 615-16 (Ind. Ct. App. 1991). Like the privilege afforded intracompany communications, that privilege protects human resource needs by permitting

---

[3] Trail has alleged only that the report was "highly negative about Trail," (Compl. ¶ 22,) but says he does not know if the report was used to persuade the Executive Committee to terminate him. (Compl. ¶ 21.)

7

former employers "to give sincere yet critical responses to requests for an appraisal of a prospective employee's qualifications" without fear of a defamation action. Id. at 615. That privilege may be overcome by showing some abuse of the privilege, such as actual or express malice. Id. at 616.

Trail argues that he need not plead with the usual particularity because the alleged communications were defamatory per se. Communications are considered defamatory per se when they impute "1) criminal conduct; 2) a loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation; or 4) or sexual misconduct" to the plaintiff. Branham v. Celadon Trucking Services, Inc., 744 N.E.2d 514, 522 (Ind. Ct. App. 2001).

The basis of Trail's argument that the communications are defamatory per se is his allegation that the defendant's unwillingness to discuss the contents of the report "would be taken erroneously to mean that Trail had been found to have committed grave personal improprieties with the children they serve or financial misdeeds such as embezzlement." (Compl. ¶ 23.) Interestingly, this allegation does not actually assert, nor relate to, any actionable defamatory statement. Rather, the allegation merely refers to the speculative effect the defendants' non-actionable silence has had on Trail's reputation. It would be an odd use of the defamation doctrine to hold that silence constitutes actionable speech.

Permitting defamation actions to proceed without the inclusion of the alleged statement would sanction claims brought by individuals who allege nothing more than that someone must have said something defamatory about them, or else they would not have been terminated or unable to secure new employment. While many of these individuals might have an actual grievance, merely making such an accusation does not establish a claim sufficiently to permit courts to determine its legal legitimacy. When all is said and done, Trail's complaint is little more than an allegation of this nature. Consequently, we affirm the trial court's dismissal of this claim.

8

### III. Tortious Interference with Employment

The trial court dismissed Trail's claim against the individual board members for tortious interference with his employment contract for two reasons: 1) because "the contract expired before the alleged interference" and 2) because "a director of a corporation will not be held personally liable for inducing the corporation's breach of its contract if the director's actions were within the scope of his official duties." (Order, Appellants' App. at 13.)

Trail says the trial court erred in dismissing this claim since even as an employee at will of the Boys and Girls Club, he is still entitled to assert such a claim. Moreover, Trail argues that his complaint did allege facts sufficient to demonstrate that the four individuals named as defendants acted outside the scope of their official capacities in firing him.

We agree with Trail that the court was incorrect to dismiss on grounds that the contract between Trail and the Club had expired at the time of his termination. As we have explained, an at-will employee "must be able to expect that his continued employment depends on the will of his employer and not upon the whim of a third party interferer." Bochnowski v. Peoples Fed. Sav. & Loan Ass'n, 571 N.E.2d 282, 285 (Ind. 1991). Such an employee may bring a claim for tortious interference provided that, in addition to demonstrating the standard elements of the tort, she is "prepared to show that the defendant interferer acted intentionally and without a legitimate business purpose." Id.

Trail appropriately acknowledges that the trial court was correct that officers and directors of corporations are not personally liable for tortious interference with the corporation's contracts unless they acted outside the scope of their official duties in causing the breach.

That an officer or director of a corporation possesses limited immunity from most charges of tortious interference with the corporation's contracts stems from both their role as agents of the corporation and the nature of the tort. A party cannot "interfere" with its own contracts, so the tort itself can be committed only by a third party. See, e.g., Martin v. Platt, 179 Ind. App. 688, 690-91, 386 N.E.2d 1026, 1027 (1979). In the case of a corporation, the legal

9

entity acts through its directors and officers. Thus, when officers or directors act in their official capacity as agents of the corporation, they act not as individuals but as the corporation itself. In doing so, they are not acting as a third party, but rather as a party to the contract and cannot be personally liable for tortious interference with the contract.

Conversely, when directors or officers act outside the scope of their official capacity, they no longer act as agents of the corporation and therefore act as a third party. Jones v. Lake Park Care Center, Inc., 569 N.W.2d 369, 377 (Iowa 1997). Directors and officers who act outside the scope of their official duties therefore can be held personally liable for tortious interference with a contract. Biberstine v. New York Blower Co., 625 N.E.2d 1308, 1318 (Ind. Ct. App. 1993); Martin, 179 Ind. App. at 690, 386 N.E.2d at 1027; Kiyose v. Trs. of Indiana Univ., 166 Ind. App. 34, 43-44, 333 N.E.2d 886, 891 (1975).

Because the officers and directors of corporations possess some immunity from claims of tortious interference, to state a claim against the officers and directors of a corporation, Trail must not only allege the basic elements of tortious interference and those special elements related to employees at will, he must also allege some interfering act by officers or directors that rests outside their authority as agents of the corporation.

Trail makes three arguments that his complaint is sufficient to state a claim against the individual defendants based on actions taken outside the scope of their authority.

First, Trail argues that in investigating and evaluating Trail the directors were outside the scope of their authority. In support of this point, Trail takes issue with the trial court's conclusion that the authority to investigate Trail fell within "the implied powers for the directors of a corporation" and states that the "only way the Trial Court could have made such a finding for [the] purposes of the T.R. 12(b)(6) motion is if the Plaintiffs had admitted it in their complain [sic] which they did not." (Br. Appellants at 12.) This is not true.

Although the trial court is limited to those facts that the plaintiff alleges in the complaint, it is not restrained from applying the law to the factual situation presented in it. Basic corporate

10

agency law indicates that directors enjoy a wide range of authorized powers including both those powers expressly granted by statute and the articles of incorporation or by-laws, and that "incidental authority necessary, usual, and proper to effectuate the main authority expressly conferred." Indiana Dep't of Pub. Welfare v. Chair Lance Serv., Inc., 523 N.E.2d 1373, 1377 (Ind. 1988). Certainly, such incidental authority includes the authority to investigate and evaluate the executive employees of the enterprise. To say that the directors lacked the authority to carry out the inquiry flies against standard corporation law.

Perhaps recognizing this, Trail argues that because he did not allege that either the Executive Committee or the Board of Directors acting as a whole authorized the individual defendants to launch the investigation, the individual defendants cannot be considered to possess the authority. (Br. Appellants at 14.) This does not save his claim. While notice pleading does not require great specificity, it cannot be allowed to degrade into a process where all claims survive a motion to dismiss simply because the plaintiff later says, "I did not plead enough." That is especially true where, as here, basic corporation law affords the directors authority to engage in the activity at issue. Because Trail has not alleged any fact that overcomes the presumed and implied powers of the directors, we cannot agree with Trail's assertion that the defendants acted outside the scope of their official duties in evaluating his work.

Second, Trail contends that the defendants acted outside the scope of their authority because the power to terminate Trail rested solely with the full Board of Directors. In support of this position, Trail points to his allegation that "[u]nder the Corporation's articles, The Board has sole authority to terminate Trail," (Compl. ¶ 19), and to Article V Section 1 of the articles of incorporation which states, in relevant part that the "business, property and affairs of the corporation shall be managed by a Board of Directors which shall have the power to . . . hire the Executive Director." (Appellants' App. at 35.)

Copies of the corporation's articles and by-laws were presented to the trial court with the defendants' reply brief without objection, and both parties have referred to, and adopted, them on appeal. (Appellants' App. at 24-33, 39-41; Br. Appellants at 2; Br. Appellees at 1,3.) These materials contradict both his assertion that the power to terminate him rested solely in the hands

11

of the Board of Directors, and his claim that the defendants in some way terminated him without action by the Executive Committee as a whole. (Articles of Incorporation Article VI Section 2, Appellants' App. at 36 — "The Executive Committee shall be vested with the powers of the Board of Directors when the same is not in session."; Decl. of Paul Bailey ¶ 7, Appellants' App. at 22 — "On June 5, 2002, the Executive Committee unanimously voted to ask Eddie Trail to resign his position as Executive Director of the Boys & Girls Clubs."). These materials certainly indicate that Trail has failed to allege any action by the individual defendants that went beyond their authority as directors. The trial court should have granted summary judgment on this claim in accordance with Trial Rule 12(B)(when "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.")

Third, Trail argues that his complaint alleged that the directors acted out of ill will towards Trail, making their actions personal rather than corporate in nature. To the extent that there are any declarations of Indiana law concerning whether a director's personal motive alone is sufficient to move an otherwise ordinary corporate decision, such as the firing of an employee, beyond the scope of the director's authority, that authority is contrary to Trail's position. Judge Hamilton had recent cause to review Indiana law on this point in Leslie v. St. Vincent New Hope, Inc., 873 F. Supp. 1250 (S.D. Ind. 1995). The court had before it a claim for tortious interference with an at-will employment relationship in which the plaintiff argued that her supervisor's "motives took her [the supervisor's] actions outside the scope of her employment." Id. at 1255. In concluding that Indiana law would not support recovery under such a theory, the court noted that the actions taken by the supervisor — such as ultimately dismissing the employee — were within the supervisor's duties as a supervisor, and that "motives could not affect whether her actions were within the scope of her duties." Id. at 1257.

In reaching that conclusion, the court also examined the holding in Martin v. Platt, 179 Ind. App. 688, 386 N.E.2d 1026 (1979), in which the Court of Appeals similarly held that an action will not lie against a supervisor for tortious interference when the supervisor fires an employee, irrespective of the supervisor's motivations, if the supervisor possessed the authority to fire the employee as part of his ordinary duties. Id. at 1027. In Trail's case, there is no

12

question that the Executive Committee possessed the authority to terminate Trail. Consequently, the defendants' action in asking Trail to resign fell within the scope of their authority as part of that group, and no action can lie against the individual members of that group for exercising their rightful authority.

Even if this were not the case, Trail has not alleged that the actions taken by the defendants were prompted by a legally improper motivation. In his complaint, Trail alleged that the defendant's improper motivation was his refusal to defer to them on matters of corporate control. (Compl. ¶ 12.) At oral argument, Trail asserted that the defendants' improper motivation was their desire to increase their own control over the operation of the Boys and Girls Clubs. However, in the unreported case which Trail himself cites, the court held that "[a]n increase in corporate control is not personal advantage" of the sort that takes a director or officer's actions outside the scope their authority for the purposes of a tortious interference claim. Nagy v. Riblet Prod. Corp., 1992 WL 318604, at *4 (N.D. Ind. July 2, 1992). Nothing in Trail's complaint suggests that the "personal advantage" sought by the defendants was anything other than larger influence over the direction of the enterprise.

## Conclusion

To survive a 12(B)(6) motion to dismiss of a tortious interference claim, the plaintiff must provide "at the very least a description of the tortious conduct." Kiyose v. Trs. of Indiana Univ., 166 Ind. App. 34, 44, 333 N.E.2d 886, 891 (1975). In this case, Trail has failed to do so. Consequently, his claim for tortious interference was properly dismissed.

We therefore affirm the decision of the trial court.

Sullivan and Boehm, JJ., concur.
Rucker, J., dissents with separate opinion in which Dickson, J., joins.

13

**Rucker, Justice, dissenting.**

I respectfully dissent. The law is settled that a complaint may not be dismissed under Ind. Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. King v. S.B., 837 N.E.2d 965, 966 (Ind. 2005); City of New Haven v. Reichhart, 748 N.E.2d 374, 377 (Ind. 2001); Martin v. Shea, 463 N.E.2d 1092, 1093 (Ind. 1984). In ruling on a motion to dismiss for failure to state a claim, the trial court is required to view the complaint in a light most favorable to the nonmoving party and with every reasonable inference in his favor. King, 837 N.E.2d at 966. The trial court may only look to the complaint, and well-pleaded material must be taken as admitted.

Ind. Trial Rule 8(A) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Under such notice pleading, a complainant is only required to plead the operative facts involved in the litigation. The rules of notice pleading do not require that the complaint recite in detail all the facts upon which the claim is based. Obremski v. Henderson, 497 N.E.2d 909, 910 (Ind. 1986). Accordingly, a complaint is sufficient if it states any set of allegations, no matter how unartfully pleaded, upon which the trial court could have granted relief. Miller v. Memorial Hosp. of South Bend, 679 N.E.2d 1329, 1332 (Ind. 1997); McQueen v. Fayette County Sch. Corp, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999). More specifically, "the plaintiff is required to provide a clean and concise statement that will put the defendants on notice as to what has taken place and the theory that the plaintiff plans to pursue." McQueen, 711 N.E.2d at 65. Indeed we view "motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits." Id.

To establish a claim of defamation, a plaintiff must prove the following: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. Schrader v. Eli Lilly & Co., 639 N.E.2d 258, 261 (Ind. 1994). In this case, the "communication" was the contents of the consultant's report. In my view the Trails' complaint alleged the operative facts relating to each element of a defamation claim: (1) a

14

communication with defamatory imputation: "[t]he Defendants have released to a few individuals the alleged contents of part of the report highly negative about [Eddie];" (2) malice: "[t]he actions of the individual Defendants were intentional and malicious;" (3) publication: "[t]he Defendants have released to a few individuals the alleged contents of part of the report highly negative about [Eddie];" and (4) damages: "[Eddie] has suffered . . . loss of earnings . . . from the Defendants' actions." Appellants' App. at 19-20. It bears repeating that under notice pleading a party is only required to plead the operative facts involved in the litigation. Here, although perhaps unartfully pleaded, the complaint is sufficient to defeat an Ind. Trial Rule 12(B)(6) motion to dismiss. And this is especially so considering that in this pre-discovery phase of litigation, the report has not yet been made available to the Trails. The defendants should not be allowed on the one hand to withhold the report, which apparently would reveal the specific contents of the allegedly defamatory statements, and on the other hand complain in effect that it has no "notice as to what has taken place and the theory that the plaintiff[s] plan . . . to pursue." McQueen, 711 N.E.2d at 65.

As for the Trails' tortious interference claim, I disagree with the majority sua sponte declaring, "the trial court should have granted summary judgment on this claim in accordance with Trial Rule 12(B)." Slip op. at 12. Unlike a motion to dismiss for failure to state a claim upon which relief can be granted which tests the legal sufficiency of a claim and not the facts supporting it, the purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. Bushong v. Williamson, 790 N.E.2d 467, 474 (Ind. 2003). Ind. Trial Rule 12(B) provides:

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56*.

(Emphasis added).

15

The record shows that in a reply in support of their earlier filed T.R. 12(B)(6) motion to dismiss, the defendants filed as an exhibit the affidavit of one of the members of the Executive Committee attached to which were the articles of incorporation and the constitution and by-laws of the Boys and Girls Club. Appellants' App. at 5, 21-41. At the hearing on defendants' motion to dismiss, the Trails acknowledged that the documents were "attached to the response—to the reply" but specifically urged "we object to this being transformed into a motion for summary judgment by attaching this to the reply or by any other means." Tr. at 13. It is true that the trial court did not enter an express order excluding these "matters outside the pleading." But it is equally true the trial court did not consider them in ruling on the defendants' motion to dismiss. The record is clear that in its six page order granting the motion, the trial court made no reference whatsoever to the defendants' exhibit. See Appellants' App. at 10-15. Instead, the trial court relied exclusively on the allegations in the Trails' complaint. Id. This is particularly significant because, among other things, had the trial court decided to rely on these materials and thus transform the motion to dismiss to a motion for summary judgment, then the Trails would have been "given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." T.R. 12(B). Pending before the trial court at the time of the motion to dismiss was defendants' motion for protective order, see Appellant's App. at 5; Tr. at 2, 24, which was apparently filed in response to the Trails' discovery requests. The trial court deferred ruling on the motion for protective order until after he had ruled on the motion to dismiss. Tr. at 2, 24. It would have been error for the trial court to have considered matters outside the pleadings offered by the defendants, not afford the Trails an opportunity to conduct discovery thereby possibly refuting the allegations contained in these external documents, and then grant summary judgment in defendants' favor. It is apparent to me that the trial court ruled solely on the basis of the pleadings. Reviewing this claim under a summary judgment standard of review is inconsistent with the record. It also places the Trails in an untenable position, which leads to my next point.

Relying on selected portions of the documents, namely: "[t]he Executive Committee shall be vested with the powers of the Board of Directors when the same is not in session" and "[o]n June 5, 2002, the Executive Committee unanimously voted to ask Eddie Trail to resign as Executive Director of the Boys & Girls Clubs," the majority concludes they "contradict both [Eddie's] assertion that the power to terminate him rested solely in the hands of the Board of

16

Directors, and his claim that the defendants in some way terminated him without action by Executive Committee as a whole." Slip op. at 12. There are at least two problems with the majority's conclusion. One, by the express terms of the Clubs' constitution, the Executive Committee is vested with the powers of the Board of Directors "when the same is not in session." There was nothing before the trial court and thus nothing before this Court declaring whether the Board was in session at the time of Eddie's termination. The defendants make no claim one way or the other. And absent discovery the Trails apparently are unable to say. Two, the affidavit of one of the Executive Committee members is the source of the claim that the Committee "unanimously" voted to terminate Eddie. This assertion however could very well be challenged if the Trails were afforded an opportunity to present their own Rule 56 materials and provided they were given the opportunity to conduct discovery.

It is of course true that basic corporations law affords directors in their official capacity the authority to investigate and evaluate their employees. See Slip op. at 11. We have held for instance that, "[a] corporate officer is not liable for inducing the corporation's breach of its contract if the officer acts within the scope of his official duties on behalf of the corporation and not as an individual for his own advantage." Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1234 n.7 (Ind. 1994). The Trails' complaint alleged that certain individual board members were not acting in an official capacity in investigating and evaluating Eddie, but rather were acting outside the scope of their official duties and for their own advantage. According to the complaint, certain individual board members contrived a study that was critical of Eddie to "discredit [him] and justify his termination." Appellants' App. at 18. The Trails alleged that those board members "structured the actual reporting so that only the four of them and select individuals, chosen solely by them, would be interviewed for the study to be performed by a consultant" and that Eddie has been denied access to the report in violation of the defendants' standard protocol and procedures. Id. The complaint also alleged that the actions of those board members were "intentional and malicious" and that Eddie has been damaged as a result of their actions. Id. at 20. In sum, the Trails alleged that certain individual board members intentionally induced a breach of Eddie's at will employment, that they acted maliciously and without justification, and that Eddie has suffered damages as a result. Further, the complaint alleged that these same board members were acting outside the scope of their official duties, namely: they

17

were unhappy, for personal reasons, about Eddie's retention as Executive Director. I agree with the Court of Appeals that these allegations are sufficient to put these individual defendants on notice of the Trails' tortious interference claim.

To be sure the bare allegations in the Trails' complaint would likely not withstand a motion for summary judgment under Ind. Trial Rule 56. But this litigation is only in the pleading stages and discovery has not yet been conducted . Therefore, I would reverse the trial court's dismissal of the Trails' defamation claim as well as the tortious interference claim against the individual board members and remand this case for further proceedings.

Dickson, J., concurs.

18