**FILED**

Jul 29 2020, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Margaret M. Christensen
Karl L. Mulvaney
Bingham Greenebaum Doll, LLP

Peter H. Pogue
Schultz & Pogue, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Jeffrey D. Powless
Toni M. Purdum
Powless Law Firm, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anonymous Physician 1, and Indianapolis Fertility, Inc., d/b/a Reproductive Endocrinology Associates, *Appellants-Defendants,* v. Elizabeth White and Matthew White, *Appellees-Plaintiffs.* | July 29, 2020 Court of Appeals Case No. 19A-CT-1262 Appeal from the Marion Superior Court The Honorable Cynthia J. Ayers, Judge Trial Court Cause No. 49D04-1612-CT-43686 |

**Pyle, Judge.**

# Statement of the Case

In this interlocutory appeal, Anonymous Physician 1 ("Physician") and Indianapolis Fertility, Inc., d/b/a Reproductive Endocrinology Associates ("Reproductive Endocrinology") (collectively "Appellants") appeal the trial court's order denying their Indiana Trial Rule 12(B)(6) motion to dismiss Matthew White's ("Matthew") multi-count complaint. Matthew filed the complaint after he had learned that Physician had used Physician's own sperm, rather than a medical school resident's donor sperm, to artificially inseminate Matthew's Mother, Elizabeth White ("Elizabeth"). As a result of this artificial insemination procedure, Elizabeth became pregnant and gave birth to Matthew. Concluding that Matthew has sufficiently stated breach of contract and tort claims for which relief can be granted, we affirm the trial court's denial of Appellants' motion to dismiss.

We affirm.

# Issue

Whether the trial court erred by denying Appellants' Trial Rule 12(B)(6) motion to dismiss.

# Facts

Because this is an appeal from a motion to dismiss, we take the undisputed facts from the complaint. In 1981, Elizabeth sought the services of Appellants to become pregnant. Physician told Elizabeth that he would artificially inseminate her with donor sperm from an anonymous medical school resident

and that he would use the donor sperm in no more than three successful artificial insemination procedures in a well-defined geographic area. At no time did Physician tell Elizabeth that he would inseminate her with his own sperm. Elizabeth subsequently entered into a contract with Appellants for an artificial insemination procedure. The contract specified that her procedure would use donor sperm from an anonymous medical school resident. Following the artificial insemination procedure, Elizabeth became pregnant and gave birth to Matthew in 1982.

[4] In September 2016, Elizabeth and Matthew learned that Physician had inseminated Elizabeth and other patients with his own sperm rather than with donor sperm from anonymous medical school residents. Two months later, in November 2016, Elizabeth and Matthew filed a proposed medical malpractice complaint against Appellants with the Indiana Department of Insurance.

[5] In December 2016, Elizabeth and Matthew filed a joint multi-count complaint for damages against Appellants in the Marion Superior Court. Matthew alleged claims for breach of contract, medical malpractice, and negligent hiring and retention. Specifically, Matthew alleged that Appellants had breached their contract with Elizabeth when Physician artificially inseminated her with Physician's sperm rather than the sperm of an anonymous medical school resident. Matthew alleged that he was a third-party beneficiary to this contract. Matthew also alleged that Appellants had breached their duty by deviating from the standard of care regarding fertility practices. Matthew further alleged that

as a result of Appellants' negligence, Matthew had suffered substantial harm and incurred significant damages.

[6]    In February 2018, Appellants filed an Indiana Trial Rule 12(B)(6) motion to dismiss Matthew's claims, alleging that Matthew had failed to state claims for which relief could be granted. Specifically, Appellants argued that Matthew had not sufficiently stated a breach of contract claim because he had failed to establish that he was a third-party beneficiary to the contract between Elizabeth and Appellants. Appellants further argued that the allegations in Matthew's complaint had failed to sufficiently state a claim for negligence because Matthew had failed to establish that Appellants owed him a duty of care and had failed to state a claim for compensable injuries.

[7]    In April 2018, Matthew filed a response to Appellants' motion to dismiss.[1] Matthew also filed an amended complaint in April 2018. In the amended complaint, Matthew alleged as follows regarding his breach of contract claim: (1) the contract between Elizabeth and Appellants "was intended to provide [Matthew] the direct benefit of life and/or existence[;]" (2) the contract "imposed a duty on at least one of the parties thereto in favor of [Matthew;]"

---

[1] In support of his response, Matthew designated Physician's deposition. Appellants filed a motion to strike Matthew's designated evidence, arguing that "[w]hen evaluating the merits of an Ind. Trial Rule 12(B)(6) motion to dismiss, the court is prohibited from hearing any evidence and may look only to the facts alleged in the complaint." (App. Vol. 2 at 94). Appellants are correct. S*ee K.M.K. v. A.K.,* 908 N.E.2d 658, 662 (Ind. Ct. App. 2009), *trans. denied*. We further note that the trial court "did not consider evidence submitted by either party, outside the facts alleged in the complaint, in the individual motions and responses thereto" and denied Appellants' motion as moot. (Trial Court's order denying Appellant's motion to dismiss, App. Vol. 2 at 12).

and (3) "performance of the terms of the contract necessarily rendered a number of tangible direct benefits to [Matthew], including his conception; intrauterine development; birth; and life as a human being." (App. Vol. 2 at 68).

[8] Regarding the negligence claim, Matthew alleged that Elizabeth had "presented to and consulted the [Appellants] for artificial insemination" in September 1981, and that "as a result of the insemination procedure performed by [Appellants], [Elizabeth] became pregnant with [Matthew], who was born on November 26, 1982." (App. Vol. 2 at 64-65). Matthew also alleged that "during that time, [Appellants] had a duty to provide reasonable and appropriate medical care to [Matthew]" and had "failed to use the ordinary skill, care and diligence in their care and treatment of [Matthew]." (App. Vol. 2 at 64, 65). Matthew's amended complaint also alleged that "[a]ccording to [Appellants'] policies and representations communicated to their patients, including [Elizabeth,] specimens from a single donor were to be used in no more than three successful insemination procedures in a well-defined geographic area. Therefore, specimens from a single donor were not to be used in more than three successful insemination procedures[.]" (App. Vol. 2 at 64). The amended complaint further alleged that this policy "was important to limit the risk of accidental incest resulting from many closely biologically related individuals living near each other and unaware of biological relationships." (App. Vol. 2 at 65). Matthew also alleged that he had "suffered substantial harm and incurred significant damages, including both emotional and physical

harms" as a result of Appellants' negligence. (App. Vol. 2 at 66). Additionally, in the amended complaint, Matthew added a count of gross negligence, which alleged that Physician's conduct "evince[d] a series of conscious, voluntary acts or omissions in reckless disregard of the consequences to [Matthew]." (App. Vol. 2 at 71).

[9] After a hearing on Appellants' motion to dismiss, the trial court concluded that Matthew had sufficiently stated breach of contract and negligence claims. Specifically, regarding the breach of contract claim, the trial court concluded that "Matthew [had] alleged specific facts, since he was born pursuant to an agreement between his mother, the doctor, and the clinic which could substantiate significant benefit to him; that is his birth." (App. Vol. 2 at 16). Regarding the negligence claim, the trial court concluded that "in examining only Matthew's complaint and not considering evidence regarding possible proof of his claims or the lack thereof, he has at least, raised an inference of a legally actionable claim." (App. Vol. 2 at 13). The trial court also specifically acknowledged Matthew's gross negligence claim and concluded that Matthew "ha[d] alleged facts which ma[d]e it possible for [that] claim to proceed." (App. Vol. 2 at 17). The trial court denied Appellants' Trial Rule 12(B)(6) motion to dismiss. Appellants now appeal that denial.

## Decision

[10] Appellants argue that the trial court erroneously denied their Trial Rule 12(B)(6) motion to dismiss Matthew's claims. Specifically, Appellants contend that Matthew failed to sufficiently state claims for which relief can be granted.

Our review of a trial court's denial of a motion to dismiss under Trial Rule 12(B)(6) is *de novo* and requires no deference to the trial court's decision. *Sims v. Beamer*, 757 N.E.2d 1021, 1024 (Ind. Ct. App. 2001). "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish *any* set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys and Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 134 (Ind. 2006) (emphasis added). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." *Id.* When reviewing a Trial Rule 12(B)(6) motion to dismiss, we accept the facts alleged in the complaint as true and view the pleadings in a light most favorable to the nonmoving party and with every reasonable inference in the nonmoving party's favor. *Id.*

We view motions to dismiss under Trial Rule 12(B)(6) "with disfavor because such motions undermine the policy of deciding causes of action on their merits." *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied.* A "plaintiff need not set out in precise detail the facts upon which the claim is based" but "must still plead the operative facts necessary to set forth an actionable claim." *Trail*, 845 N.E.2d at 135. Indeed, under the notice pleading requirements, a plaintiff's complaint needs only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Indiana Trial Rule 8(A)). "A complaint's allegations are

sufficient if they put a reasonable person on notice as to why plaintiff sues. Defendants thereafter may 'flesh out' the evidentiary facts through discovery[.]" *Capitol Neon Signs, Inc. v. Indiana National Bank*, 501 N.E.2d 1082, 1085 (Ind. Ct. App. 1986).

[13] "Dismissals are improper under 12(B)(6) 'unless it appears *to a certainty* on the face of the complaint that the complaining party is not entitled to any relief.'" *Bellwether Properties, LLC v. Duke Energy Indiana, Inc.*, 87 N.E.3d 462, 466 (Ind. 2017) (quoting *State v. American Family Voices, Inc.*, 898 N.E.2d 293, 296 (Ind. 2008) (emphasis added)). In addition, dismissals under T.R. 12(B)(6) are "rarely appropriate." *American Family Voices,* 898 N.E.2d at 296.

[14] We turn first to Matthew's breach of contract claim. Appellants argue that Matthew has failed to state a breach of contract claim because he has failed to establish that he was a third-party beneficiary to the contract between Elizabeth and Appellants.

[15] At the outset, we note that because we are reviewing the denial of a Trial Rule 12(B)(6) motion to dismiss, we need not determine whether Matthew *was* a third-person beneficiary to the contract. Rather, at this point, we look at the allegations in Matthew's complaint, which we accept as true, to determine whether they establish *any* set of circumstances under which Matthew would be entitled to relief as a third-party beneficiary and whether they have "stated some factual scenario in which a legally actionable injury has occurred." *Trail*, 845 N.E.2d at 134.

Generally, only those who are parties to a contract, or those in privity with a party, have the right to recover under a contract. *Flaherty & Collins, Inc. v. BBR-Vision I, L.P.*, 990 N.E.2d 958, 971 (Ind. Ct. App. 2013), *trans. denied*. However, one who is not a party to a contract may enforce its provisions by demonstrating that he is a third-party beneficiary to the contract. *Id.*

> 'A third-party beneficiary contract is one in which the promisor has a legal interest in performance in favor of the third party and in which the performance of the terms of the contract between two parties must necessarily result in a direct benefit to a third party which was so intended by the parties.' A third party must show that it will derive more than an incidental benefit from the performance of the promisor.
>
> In order to enforce a contract by virtue of being a third-party beneficiary, an entity must show (1) clear intent by the actual parties to the contract to benefit the third party; (2) a duty imposed on one of the contracting parties in favor of the third party; and (3) performance of the contract terms necessary to render the third party a direct benefit intended by the parties to the contract. Among these three factors, the intent of the contracting parties to benefit the third-party is controlling.

*Id.* (quoting *Centennial Mortgage, Inc. v. Blumenfeld*, 745 N.E.2d 268, 275 (Ind. Ct. App. 2001)).

Here, Matthew alleges in his amended complaint that: (1) the contract between Elizabeth and Appellants "was intended to provide [Matthew] the direct benefit of life and/or existence[;]" (2) the contract "imposed a duty on at least one of the parties thereto in favor of [Matthew;]" and (3) "performance of the terms of the contract necessarily rendered a number of tangible direct benefits to

[Matthew], including his conception; intrauterine development; birth; and life as a human being." (App. Vol. 2 at 68). Taking these allegations as true, as we must do when conducting a Trial Rule 12(B)(6) review, Matthew has established a set of circumstances under which he would be entitled to relief as a third-party beneficiary. Matthew has therefore stated a claim for which relief can be granted, and the trial court did not err in denying Appellants' motion to dismiss Matthew's breach of contract action.

[18] We next turn to Matthew's tort claims. All negligence actions, including those for medical malpractice, include the same elements that must be proven. *Bader v. Johnson*, 732 N.E.2d 1212, 1216-17 (Ind. 2000). Specifically, the plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury caused by defendant's breach of that duty. *Id.* at 1217.

[19] Appellants argue that "Matthew's tort claims must fail because he was not owed a duty before he was conceived." (Appellants' Br. at 38). Again, given our procedural posture of reviewing the denial of a Trial Rule 12(B)(6) motion to dismiss, we need not determine whether Appellants owed Matthew a duty. Rather, at this point, we look at the allegations in Matthews complaint, accepting them as true, to determine whether they establish *any* set of circumstances under which Matthew would be entitled to relief. *See Trail*, 845 N.E.2d at 134.

[20]    *Walker v. Rinck*, 604 N.E.2d 591 (Ind. 1992), is instructive in determining whether Matthew has stated a negligence claim for which relief can be granted. In the *Walker* case, when Mrs. Walker ("Mrs. Walker") became pregnant, she informed Dr. Rinck ("Dr. Rinck") that she had Rh negative blood.[2] Dr. Rinck ordered laboratory blood tests, which erroneously reported that Mrs. Walker had Rh positive blood. As a result of the lab test, Mrs. Walker was not given a RhoGAM injection when her child was born. In fact, Mrs. Walker was correct that she had Rh negative blood, and her child had Rh positive blood. Mrs. Walker was therefore exposed to the formation of potentially harmful antibodies. Mrs. Walker subsequently gave birth to three more children, all of whom had Rh positive blood and suffered from birth defects.

[21]    All three subsequent children ("the Walker Children") filed negligence actions against Dr. Rinck and the lab that had erroneously reported that Mrs. Walker had Rh positive blood. Dr. Rinck and the lab filed summary judgment motions, which the trial court granted. This Court affirmed the grant of

---

[2] The Indiana Supreme Court explained as follows:

> When an Rh negative woman is pregnant with an Rh positive child, her blood develops antibodies which do not affect the present pregnancy, but can cause damage to later-conceived Rh positive fetuses. An injection of RhoGAM during the first pregnancy can prevent the formation of these antibodies. However, if the injection is not given in a timely manner and the mother's body manufactures the antibodies, no medical treatment is known which can reverse or destroy the antibodies. 3 *Attorney's Dictionary of Medicine* p. R-84 (1986). RhoGAM is a trademark of a preparation of Rh immune globulin. It is used to prevent the formation of antibodies in Rh negative women who have received Rh positive blood. *Id.* at p.R.92.

*Walker*, 604 N.E.2d at 592 n.1.

summary judgment in favor of Dr. Rinck and the lab. *Walker v. Rinck*, 566 N.E.2d 1088, 1090 (Ind. Ct. App. 1991), *trans. granted by* 604 N.E.2d 591 (Ind. 1992).

[22] The Indiana Supreme Court granted transfer in *Walker* and stated that "[a]lthough it [was] true that there was no direct physician-patient relationship between Dr. Rinck and the Walker children at the time he treated their mother, our analysis of a physician's duty to a patient as discussed in *Webb v. Jarvis,* [575 N.E.2d 992 (Ind. 1991)], compels us to conclude that, nevertheless, Dr. Rinck owed the children a duty." [3] *Walker*, 604 N.E.2d at 594. The Indiana Supreme Court identified the following facts in support of its conclusion: (1) the Walker children were the beneficiaries of the consensual relationship between Mrs. Walker and Dr. Rinck, akin to a third-party beneficiary of a contract; (2) Dr. Rinck knew that the reason for the RhoGAM was to benefit Mrs. Walker's future children; (3) the injuries to the Walker children were foreseeable where the reason to give the RhoGAM shot was to prevent the exact injuries that occurred; (4) there was no direct conflict between Dr. Rinck's moral duty to

---

[3] In *Webb*, 575 N.E.2d at 996, the Indiana Supreme Court set forth the following three factors to determine whether a shooting victim had stated a cognizable claim against a physician who had allegedly overprescribed anabolic steroids to a patient that had become a "toxic psychotic who was unable to control his rages" and had shot the victim: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. The Indiana Supreme Court, which subsequently periodically used these factors in analyzing the existence of a duty in certain cases, disapproved of the *Webb v. Jarvis* analysis regarding foreseeability in the context of duty in *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 390 (Ind. 2016) and *Rogers v. Martin*, 63 N.E.3d 316, 325 (Ind. 2016). However, neither *Goodwin* nor *Rogers* overruled or disapproved of the *Walker* case in its entirety.

Mrs. Walker and his legal duty to hypothetical future generations; and (5) Indiana's public policy surely followed and was coincident with the well-established medical practice of giving RhoGAM to an Rh negative mother who has given birth to an Rh positive child in order to protect the mother's future children from injury. *Id.* at 594-95. *See also Spangler v. Bechtel*, 958 N.E.2d 458, 468 (Ind. 2011) ("Individuals including health care providers owe unborn children a duty of care"); *Ransburg Indus. v. Brown*, 659 N.E.2d 1081,1084 (Ind. Ct. App. 1995) (recognizing that "our supreme court has recognized a cause of action for a preconception tort"); *Yeager v. Bloomington Obstetrics and Gynecology, Inc.*, 585 N.E.2d 696, 700 (Ind. Ct. App. 1992), *trans. granted and summarily affirmed*, 604 N.E.2d 598 (Ind. 1992) (stating "that a blanket no-duty rule disallowing all claims based upon alleged preconception torts is unnecessary, unjust, and contrary to fundamental and traditional principles of Indiana tort law" and holding that a child's complaint "sufficiently state[d] a cognizable claim" against a physician who had failed to give the child's mother a RhoGAM shot after her first child was born with Rh positive blood).

[23] Here, in his amended complaint, Matthew alleged that Elizabeth had "presented to and consulted the [Appellants] for artificial insemination" in September 1981, and that "[a]s a result of the insemination procedure performed by [Appellants] [Elizabeth] became pregnant with [Matthew], who was born on November 26, 1982." (App. Vol. 2 at 64-65). Matthew also alleged that "during that time, [Appellants] had a duty to provide reasonable and appropriate medical care to [Matthew]" and had "failed to use the ordinary

skill, care and diligence in their care and treatment of [Matthew]." (App. Vol. 2 at 64, 65). Matthew's amended complaint also alleged that "[a]ccording to [Appellants'] policies and representations communicated to their patients, including [Elizabeth,] specimens from a single donor were to be used in no more than three successful insemination procedures in a well-defined geographic area. Therefore, specimens from a single donor were not to be used in more than three successful insemination procedures[.]" (App. Vol. 2 at 64). The amended complaint further alleged that this policy "was important to limit the risk of accidental incest resulting from many closely biologically related individuals living near each other and unaware of their biological relationships." (App. Vol. 2 at 65).

[24] Taking these facts as true and viewing the pleadings with every reasonable inference in Matthew's favor, we conclude that Matthew has pleaded the operative facts necessary to establish that Appellants owed him a duty of care. *See Trail*, 845 N.E.2d at 135. In other words, because it does not appear to a certainty on the face of the complaint that Matthew is not entitled to relief, a dismissal of Matthew's complaint would have been improper. *See Bellwether*, 87 N.E.3d at 466.

[25] Appellants also argue that Matthew's tort claims should have been dismissed because Matthew failed to state a claim for compensable injuries. Appellants specifically argue that Matthew's claim "is a variation of the harm of wrongful life, which has been considered and rejected as a compensable injury by the

Indiana Supreme Court." (Appellants' Br. at 20). We disagree with Appellants' characterization of Matthew's claim.

[26] In *Cowe by Cowe v. Forum Group, Inc.*, 575 N.E.2d 630 (Ind. 1991), the Indiana Supreme Court gave the following "brief summary of the prevailing nomenclature" as follows:

> The phrase 'wrongful birth' applies to claims brought by the parents of a child born with birth defects alleging that due to negligent medical advice or testing they were precluded from an informed decision about whether to conceive a potentially handicapped child or, in the event of a pregnancy, to terminate it. When such action seeks damages on behalf of the child rather than the parents, the phrase 'wrongful life' instead of 'wrongful birth' is employed.

*Id*. at 633 (internal citations omitted).

[27] Here, Matthew was neither born with birth defects nor does he allege that, due to negligent medical advice or testing, Elizabeth was precluded from an informed decision about whether to conceive a potentially handicapped child or terminate her pregnancy. He also does not allege that his life is an injury. Rather, Matthew alleges that Appellants breached their duty of care and that breach caused him to suffer both physical and emotional damages.[4]

---

[4] Matthew's complaint does not include a separate claim for intentional infliction of emotional distress.

[28] Adhering to our Trial Rule 12(B)(6) standard of review, we need not determine whether Matthew actually suffered physical and emotional damages. Rather, at this point, we look at the allegations in Matthew's complaint, accepting them as true, to determine whether they establish *any* set of circumstances under which Matthew would be entitled to relief. *See Trail*, 845 N.E.2d at 134.

[29] The Indiana Supreme Court has explained as follows regarding damages:

> It is a well-established principle that damages are awarded to fairly and adequately compensate an injured party for [his] loss, and the proper measure of damages must be flexible enough to fit the circumstances. In tort actions generally, all damages directly related to the wrong and arising without an intervening agency are recoverable. In negligence actions specifically, the injured party is entitled to damages proximately caused by the tortfeasor's breach of duty.

*Bader*, 732 N.E.2d at 1220 (internal citations omitted).

[30] Here, Matthew has alleged that Elizabeth had "presented to and consulted the [Appellants] for artificial insemination" in September 1981, and that "as a result of the insemination procedure performed by [Appellants], [Elizabeth] became pregnant with [Matthew], who was born on November 26, 1982." (App. Vol. 2 at 64-65). Matthew also alleged that "during that time, [Appellants] had a duty to provide reasonable and appropriate medical care to [Matthew]" and had "failed to use the ordinary skill, care and diligence in their care and treatment of [Matthew]." (App. Vol. 2 at 64, 65). Matthew also alleged that he had "suffered substantial harm and incurred significant damages, including both

emotional and physical harms" as a result of Appellants' negligence. (App. Vol. 2 at 66). Taking these allegations as true, Matthew has established a set of circumstances under which he would be entitled to damages proximately caused by Appellants' breach of duty.

[31] To the extent Appellants argue that Matthew is not entitled to damages for emotional distress, we note that *Bader*, 732 N.E.2d at 1212 is instructive. In the *Bader* case, Ronald ("Ronald") and Connie ("Connie") Johnson's (collectively ("the Johnsons") first child was born with hydrocephalus and severe disabilities and died at four months of age. When Connie became pregnant again, the Johnsons scheduled an appointment with Dr. Patricia Bader ("Dr. Bader") at Northwest Indiana Genetic Counseling, In, (collectively "Healthcare Providers"). Because an ultrasound revealed a fetus with a larger than expected brain cavity and an unusual head shape, Dr. Bader requested her staff to schedule Connie for follow-up testing. However, due to an office error, Connie was never scheduled for testing and the ultrasound report was not forwarded to Connie's treating physician. By the time Connie's treating physician performed his own ultrasound and discovered that the unborn child had hydrocephalus, it was too late to terminate the pregnancy. The child was born with multiple birth defects and also died four months later.

[32] The Johnsons filed a negligence action against Healthcare Providers based upon Healthcare Providers' failure to inform the Johnsons of the ultrasound results. Healthcare Providers responded with a summary judgment motion contending that Indiana did not recognize a claim for wrongful birth and that, even if it did,

the trial court needed to determine what damages, if any, were recoverable. The trial court denied the summary judgment motion and concluded that the Johnsons could recover several damages, including damages for emotional anguish. Healthcare Providers appealed, and this Court affirmed the trial court except for the emotional distress damages. *Bader v. Johnson*, 675 N.E.2d 1119 (Ind. Ct. App. 1997), *trans. granted*.

[33] The Indiana Supreme Court granted transfer and concluded that the emotional distress damages that the Johnsons sought were "consistent with those naturally flowing from Healthcare Providers' breach of duty." *Bader*, 732 N.E.2d at 1221. Specifically, the supreme court reviewed the following modified physical impact requirement for obtaining emotional distress damages:

> When, as here, a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . . such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury.

*Id.* (quoting *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991)).

[34] The supreme court further pointed out that "when the courts have been satisfied that the facts of a particular case are such that the alleged mental anguish was not likely speculative, exaggerated, fictitious, or unforeseeable, then the claimant has been allowed to proceed with an emotional distress claim for

damages even though the physical impact was slight, or the evidence of physical impact seemed to have been rather tenuous." *Bader*, 732 N.E.2d at 1221 (and cases cited therein). In addition, the impact need only "'arise[] from the plaintiff's direct involvement in the tortfeasor's negligent conduct.'" *Bader*, 732 N.E.2d at 1222 (quoting *Conder v. Wood*, 716 N.E.2d 432, 435 n.3 (Ind. 1999)).

[35] Applying the modified impact rule to the facts in *Bader*, the supreme court concluded that "Connie's continued pregnancy and the physical transformation her body underwent as a result, satisf[ied] the direct impact requirement of our modified impact rule." *Bader*, 732 N.E.2d at 1222. The supreme court further concluded that, provided Connie could prevail on her negligence claim, there was no reason why Connie should not have been able to claim damages for emotional distress. *Id.* However, the supreme court also concluded that because Ronald had not suffered a direct impact as a result of Healthcare Provider's alleged negligence, at most he was a relative bystander, a classification of potential victims the supreme court had recently adopted in *Groves v. Taylor*, 729 N.E.2d 569, 572-73 (Ind. 2000).[5] The supreme court concluded that whether Ronald could prevail on his claim for emotional

---

[5] "'[W]here the direct impact test is not met, a bystander may nevertheless establish "direct involvement" by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortuous conduct.'" *Bader*, 732 N.E.2d at 1222, n.9 (quoting *Groves*, 729 N.E.2d at 573).

distress damages depended on the evidence adduced at trial and affirmed the trial court's denial of Healthcare Provider's summary judgment motion.

[36] Here, because Matthew has stated a damages claim for which relief can be granted and placed Appellants on notice as to why he sues, Appellants may "flesh out" specific evidentiary facts regarding Matthew's damages through the discovery process. *See Capitol Neon Signs*, 501 N.E.2d at 1085. Whether Matthew can prevail on a claim for emotional distress damages will depend on those facts.[6]

# Conclusion

[37]  Matthew has sufficiently stated breach of contract and tort claims for which relief can be granted. Accordingly, the trial court did not err in denying Appellants' motion to dismiss.[7]

---

[6] In their appellate brief, Appellants "anticipate[d] Matthew [would] argue his claim [was] permitted pursuant to Indiana's recently adopted 'Civil Fertility Fraud Law' which allows a 'child born as the result of the actions of a physician' to 'bring an action against a health care provider who knowingly or intentionally treated the woman for infertility by using the health care provider's own spermatozoon or ovum, without the patient's own informed written consent to treatment using the spermatozoon or ovum.' Ind. Code § 34-24-5-2." (Appellants' Br. 32). Because Matthew did not so argue, we need not determine whether this statute is applicable to Matthew's claims.

[7] In their reply brief, Appellants argue that Matthew has waived appellate review of his gross negligence claim because he failed to raise it to the trial court. We disagree. First, Appellants have waived appellate review of this issue because a party cannot raise an issue for the first time in its reply brief. *See Felsher v. University of Evansville,* 755 N.E.2d 589, 593 n.6 (Ind. 2001). Second, our review of the trial court's order denying Appellants' motion to dismiss reveals that the trial court specifically acknowledged Matthew's gross negligence claim and concluded that Matthew "ha[d] alleged facts which ma[d]e it possible for [that] claim to proceed." (App. Vol. 2 at 17).

Affirmed.

May, J., and Crone, J., concur.